**DOFFLEMYER et al. v. NATIONAL LABOR RELATIONS BOARD.**

**NATIONAL LABOR RELATIONS BOARD v. DOFFLEMYER et al.**

**No. 13646.**

United States Court of Appeals
Ninth Circuit.

Sept. 4, 1953.

Ivan G. McDaniel and Kenneth N. Dellamater, Los Angeles, Cal., for petitioner.

George J. Bott, Gen. Counsel, David P. Findling, Associate Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, Frederick U. Reel, Jean Engstrom, Attys., National Labor Relations Board, Washington, D. C., for respondent.

Before HEALY, BONE, and ORR, Circuit Judges.

HEALY, Circuit Judge.

The petitioners ask us to set aside an order of the National Labor Relations Board, and the Board in turn seeks enforcement. The order proceeds on a finding that an employee of petitioners, one Flossie Baty, who worked as a packer in petitioners' grape packing shed, was discharged because her son had participated in concert with some other employees in a walkout following an unsuccessful wage demand. Petitioners contend that Mrs. Baty was not discharged but merely quit through sympathy with those who walked off the job. However, their main contention, and the only one we shall notice, is that their activities are agricultural and as such beyond the jurisdiction of the Board.

The petitioners, who were proceeded against individually and as copartners, are W. Todd Dofflemyer, his brother Lewis L. Dofflemyer, and the former's son, Robert T. Dofflemyer. As partners under the name of Dofflemyer Bros. they own and operate a packing shed and storage plant. Here they pack and store grapes grown on adjoining lands, some 80 acres in extent, which they own and operate individually or in partnership. Petitioners do not serve others but pack and ship only the product of their own lands.

The packing season normally extends from August to November, with a lull in September. The grapes are brought from the fields in boxes and are sorted and culled. They are then repacked in new boxes and moved to the storage room where they are kept cool until sold. The packing plant has 93 employees, about 80% of whom work exclusively in the shed. The remaining 20% spend part of their time in the fields. The work is correlated as between the ranch and the shed so that the supply comes in regularly. Separate time and payroll records are kept for the two classes of workers, field and plant.

The National Labor Relations Act, § 2 (3), excludes from its operation "any individual employed as an agricultural laborer". Annually since 1946 Congress has added a rider to the appropriation for the Board providing that no part of the ap-

propriation "shall be * * * used in connection with investigations, hearings, directives, or orders concerning the bargaining units composed of agricultural laborers as referred to in * * * section 3(f)" of the Fair Labor Standards Act. That section of the latter Act, 29 U.S.C.A. § 203(f), so far as here pertinent, defines agriculture as including "any practices * * * performed by a farmer or on a farm as an incident to or in conjunction with such farming operations, including preparation for market, delivery to storage or to market or to carriers for transportation to market." The parties are agreed that the foregoing definition affords the standard for determining whether or not the packing shed workers are agricultural laborers and thus excluded from Board competence.

Construing this definition as an original proposition it would seem clear that the work of the packing shed employees is agricultural. The practices in question were performed by farmers and on a farm. They were carried on in conjunction with and incidental to the farming operations. Only the products grown by the partners on their lands were packed; there was no change in the form of the product; and the purpose of the operation was to prepare the product for market or for delivery to carriers for transportation to market.

Nevertheless counsel for the Board strive to build up a case for the assertion of Board jurisdiction. Virtually their entire reliance is on the circumstance that the packing shed is conducted by a partnership, whereas the grapes are grown on lands owned and operated by the individuals constituting the partnership. This circumstance, we are told, makes of the packing activity an enterprise separate and distinct from the farming activity. Cases such as Idaho Potato Growers v. N. L. R. B., 9 Cir., 144 F.2d 295; North Whittier Heights Citrus Ass'n v. N. L. R. B., 9 Cir., 109 F. 2d 76; and Farmers Reservoir & Irrigation Co. v. McComb, 337 U.S. 755, 69 S.Ct.

1274, 93 L.Ed. 1672, are cited as presenting analogous situations.[1]

We shall not undertake to analyze those authorities at any length. A glance at the situations involved in them shows how far removed they are from the present case. What we have here is little more than an informal family enterprise. The same three individuals—two brothers and a son of one of them—appear as the sole moving characters both in the production of the grapes and in their preparation for market. Against this background it is wholly unrealistic to view the partnership as a separate unit or legal entity apart from the individuals who made it up, and by this process to analogize the situation with the totally dissimilar setup obtaining, for example, in Farmers Reservoir & Irrigation Co. v. McComb, supra. Compare Stivers v. Department of Employment, Cal.App., 255 P. 2d 440.

The order of the Board is set aside and its petition for enforcement dismissed.

---

1. The Potato Growers and North Whittier cases were decided prior to 1946, but in N. L. R. B. v. Pappas & Co., 9 Cir., 203 F.2d 569, the opinion was expressed by way of dicta that the 1946 Congressional prohibition did not weaken them as authorities.