Arthur J. GOLDBERG, Secretary of Labor, United States Department of Labor, Appellant,

v.

CROWLEY RIDGE FRUIT & VEGETABLE GROWERS ASSOCIATION, a corporation, Appellee.

No. 16732.

United States Court of Appeals Eighth Circuit.

Oct. 16, 1961.

Beate Bloch, Attorney, U. S. Dept. of Labor, Washington, D. C., Bessie Margolin, Asst. Solicitor, U. S. Dept. of Labor, Washington, D. C., Charles Donahue, Solicitor of Labor, U. S. Dept. of Labor, Washington, D. C., and Earl Street, Regional Attorney, Dallas, Tex., on the brief, for appellant.

E. J. Butler, Forrest City, Ark., for appellee.

Before SANBORN, MATTHES and RIDGE, Circuit Judges.

RIDGE, Circuit Judge.

The Secretary of Labor commenced this action under Section 16'(c) of the Fair Labor Standards Act (29 U.S.C.A. § 216(c)) to recover unpaid minimum wages and unpaid overtime compensation allegedly due thirty-five employees of ap-

pellee. Appellee, hereinafter referred to as "the Association," is a corporation, duly organized under the laws of the State of Arkansas. It was formulated by a group of eight peach farmers and growers for the purpose of "common co-operation for the better sale of peaches" grown by them on their respective farms.

The undisputed facts reveal that the peach-grower members of the Association set up, equipped and mutually bore the cost of a shed in Forrest City, Arkansas, for the grading, processing and packing of peaches which were grown on the separate farms of the members. The employees on whose behalf this suit was brought worked in that shed, processing, packing and handling peaches during the 1957 and 1958 peach harvests. During both of those peach-growing-packing seasons the Association members brought their peaches in trucks to the shed. The peaches were then unloaded on the shed docks and identified as those of an individual member. Thereafter, they were processed and packed; and placed aboard trucks for shipment in interstate commerce. In so dealing with the produce, each grower's peaches were run through the shed separately and retained that grower's identification marks thereon until they were sold at destination. Shipment of the peaches from the Association's shed was not made in the name of the Association but in the name of Summersweet Orchard Sales Company (hereinafter called "Summersweet") who, through its agent, A. C. Eichberg, set the price therefor, transferred title thereto, and sold the peaches to the purchaser thereof in "Summersweet's" name. The total proceeds from all sales so made were paid to Summersweet, who in turn paid the same, in toto, over to the Association. At the end of each season, the Association paid "Summersweet" a commission of ten cents per bushel for selling the peaches. After payment of such commission, the funds of the Association were then distributed to the peach-grower owners at the end of the peach-growing-packing season in ratio of the peaches they had packed at the shed,

less the expense of operating the shed. Under that arrangement each peach-grower member paid a proportionate part of the cost and expense of operating the shed.

A. C. Eichberg, a member of the Association, also *runs* Summersweet Orchard Sales Company. (Whether that entity is a corporate one, or a trade-name, is not established in the record.) Eichberg is also in overall charge of operation of the Association's shed. He is in direct charge of sales. He also employs most of the Association's employees, and operates the shed in cooperation and consultation with the other seven members of the Association. The packing plant employees worked under the direct supervision of a foreman who was employed by the Association upon the recommendation of a member other than Eichberg. The individual members of the Association frequently observed the operations of the packing plant and, at times, instructed employees concerning the grading and packing of their own peaches when run through the shed. The wages of all employees were fixed by the members of the Association at meetings held frequently throughout the harvesting season. Such wages were paid by checks issued by, and in the name of, the Association, and the Association paid Social Security taxes for all its employees. The Association neither owned nor operated any farm and the shed above mentioned was not located on a farm.

Under the above-stated facts, the District Court found that the employees for whom this action is brought were exempt from the minimum wage and overtime requirements of the Fair Labor Standards Act, (29 U.S.C.A. § 201 etc.) on the premise (tersely stated) that the Association "was merely used as an agent and vehicle of convenience by the individual peach growers and farmers" who were members and "as such, was part of an operation of peach farmers banded together and engaged in the processing and packing of their own individual peaches, and, as such, is entitled to claim the agricultural exemption from the mini-

mum wage and overtime compensation provisions of the Fair Labor Standards Act," under 3(f) and 13(a) (6) thereof, as amended.

On that premise the District Court entered judgment dismissing the Secretary's original and supplemental complaints and entered judgment in favor of defendant in this action. In so doing, we think the District Court erred in its consideration of applicable and controlling provisions of the Act, as interpreted by the Supreme Court of the United States, in Farmers Reservoir & Irrigation Co. v. McComb, 1949, 337 U.S. 755, 69 S.Ct. 1274, 93 L.Ed. 1672.

Section 13(a) (6) of the Act, supra, exempts from the minimum wage and overtime provisions thereof, among others, "any employee employed in agriculture." Section 3(f) of the Act defines the term "agriculture" as follows:

> " 'Agriculture' includes farming in all its branches and among other things includes the cultivation and tillage of the soil, dairying, and production, cultivation, growing, and harvesting of any agricultural or horticultural commodities (including commodities defined as agricultural commodities in section 15(g) of the Agricultural Marketing Act, as amended), the raising of livestock, bees, fur-bearing animals, or poultry, and any practices (including any forestry or lumbering operations) performed by a farmer or on a farm as an incident to or in conjunction with such farming operations, including preparation for market, delivery to storage or to market or to carriers for transportation to market."

The inapplicability of the above definition to the work of the employees in the present case is so categorically declared and finalized by interpretation of Section 3(f) and 13(a) (6) of the Act, by the Supreme Court in Farmers Reservoir & Irrigation Co. v. McComb, supra, that it is readily apparent to this Court that any claimed agricultural exemption by this Association, under the facts existing in this case, should have been denied and rejected.

By its decision in the Farmers Irrigation case, supra, the Supreme Court held that field employees (ditch riders, lake tenders and maintenance men) of a nonprofit irrigation company mutually owned by farmers and serving only member-farmers, were within the coverage of the Fair Labor Standards Act as employed in an " 'occupation necessary to the production' of goods for interstate commerce," but not exempt under Section 13(a), as being "employed in agriculture"; that the irrigation company there considered was not engaged in "agriculture" within the meaning of Section 3(f) of the Act, since it owned no farms, raised no crops, and was not engaged in cultivating or tilling the soil or in growing any agricultural commodity; and, that employees of such irrigation company were not exempt under 13(a) (6), supra, as the activities of employees there in question were not "performed by a farmer or on a farm," within the meaning of Section 3(f). The Supreme Court in that case pointed out that the statutory definition of "agriculture" has two distinct meanings. The "primary meaning" which includes "farming in all its branches," such as "cultivation and tillage of the soil * * * growing, and harvesting" of crops; and a "second" and "broader meaning" which includes other farm practices, but "only if they are performed by a farmer or on a farm." 337 U.S. 762–763, 766, 69 S.Ct. 1274, 1278, 1280. Plainly, from what is said in the Farmers Irrigation case, supra, neither such "primary" nor "secondary" meaning of the term "agriculture" has any application to a packing shed owned and conducted by an independent entity, though composed of farmers, which entity owns no farms and is not engaged in any farming and operates a packing shed, not located on a farm but in a community from which it draws almost all of its employees for the operation of its business, independent of any "agricultural" considerations, within the meaning of the Act.

The conclusion of the District Court, as hereinabove noted, is therefore not a reasonable one to be made from the facts of this case. Under the undisputed facts here established, such conclusion is in direct conflict with what the Supreme Court said and rejected with respect to a similar set of facts, in the Farmers Irrigation Company case. The factual situation in that case cannot be distinguished from those existing in the case at bar. In respect thereto, the Court said:

"Even if it were conceded that the exemption includes the work of persons who do no farming but are employed by farmers, it still does not include the company's (Association's) employees because they are not, in fact, so employed. There is a difference between the hiring of mutual servants by a group of employers and the creation by them of a separate business organization, with its own officers, property, and bonded indebtedness, which in turn hires working men. Those working men are in no real sense employees of the shareholders of the organization. They are hired by the organization fired by the organization, controlled and directed by the organization, and paid by it. The fact that the organization is a corporate one adds to the picture but is not controlling. The controlling fact is that the company has been set up by the farmers as an independent entity to operate an integrated, unitary water supply system (packing shed). The function of supplying water (grading, processing, and packing peaches) has thus been divorced by the farmers from the farming operation and set up as a separate and self-contained activity * * *. Those employed in that activity are employed by the company, not by the farmers who own the company. The fact that the company is not operated for profit is immaterial. It is nonetheless the employer. (337 U.S. at pages 768–769, 69 S.Ct. at page 1281)."

The Farmers Irrigation Company case, supra, is so apposite and directly in point in all material respects, that it is dispositive of appellee's contentions of exemption under 13(a) (6) of the Act as here made.[1]

Notwithstanding, appellee asserts that shortly after the rendition of the opinion in the Farmers Irrigation Company case the Congress, by legislative action, nullified the legal effect of that decision. This, on the ground that there is now a strong indication from the 1949 amendments, made to the Fair Labor Standards Act and particularly Section 13(a) (6) thereof (c. 736, 63 Stat. 910, 918), and later decisions handed down by the Supreme Court and some lower Federal Courts, that on the facts as found by the District Court in the case at bar it is reasonable to assume that if the issue here for decision was again presented to the Supreme Court an indicated ruling would be made, that appellee is entitled, under present Sections 3(f) and 13(a) (6), to an agricultural exemption as claimed by appellee. In support of such contention, appellee relies on Goldberg v. Whitaker House Co-Operative, Inc., 366 U.S. 28, 81 S.Ct. 933, 6 L.Ed.2d 100; Maneja v. Waialua Agricultural Co., Ltd., 349 U.S. 254, 75 S.Ct. 719, 99 L.Ed. 1040; Dofflemyer v. National Labor Relations Board, 9 Cir., 206 F.2d 813; and Mitchell

---

1. The Farmers Irrigation Company case was held to be squarely in point to a factual situation directly analogous to that existing in the present case, in Puerto Rico Tobacco Marketing Co-Op Ass'n v. McComb, 1 Cir., 1950, 181 F.2d 697, 700. The mere fact that in this case the owners of farms are members of the Association does not make the shed incident to farming within the meaning of the Act.

The separate identity of a cooperative association is distinct from that of its shareholder members. (cf.) Goldberg v. Whitaker House Corp., 1961, 366 U.S. 28, 81 S.Ct. 933, 6 L.Ed.2d 100; Meeker Co-Operative Light & Power Ass'n v. Phillips, 8 Cir., 158 F.2d 698; Redlands Foothill Groves v. Jacobs, D.C.S.D.Cal. 1940, 30 F.Supp. 995.

v. Hornbuckle, D.C.M.D.Ga.1957, 155 F. Supp. 205. A most loose and cursory reading of the opinion in those cited authorities will reveal that appellee's reliance thereon in support of either such contention, and its claim of exemption here made, is wholly misplaced; for the simple reason that the issue here involved was not directly ruled in the cited cases; as it was in the Farmers Irrigation case. The "heart" of the exemption considered and sustained in the Maneja v. Waialua, etc. case, supra, was the situs of the employment of the Waialua workers, which was done in plants and facilities located on the plantation of Waialua. In the Whitaker House case, supra, homeworker-members of a cooperative, organized to market the products of the homeworkers, were declared to be employees of the cooperative and not within any exemption contained in the Act. The Dofflemyer case involved a partnership engaged in farming and involved a packing shed located "on adjoining land." Similarly, the Hornbuckle case, supra, was concerned with the practice of an individual farmer, acting alone and in his own behalf in relation to a packing shed located in a village where everything done was directed to "preparation for market (and) delivery to market or to carriers for transportation to market [by a farmer]" of his own produce. Since those "practices were performed by a farmer," it was held in the Dofflemyer and Hornbuckle cases that they "did not have to be performed on a farm and the fact that the packing shed" was located in the village and on adjacent property to a farm, "does not matter." 155 F. Supp. 205, 211. Both such cases are, therefore, distinguishable on their facts.

The 1949 amendment to Section 13(a) (6), making certain irrigation company employees exempt from the minimum wage and overtime provisions of the Act, did not nullify the interpretation given to "employee employed in agriculture" contained in that section, as declared by the Supreme Court in the Farmers Irrigation Co. case, supra. The "agricultural" exemption found in the 1938 Act, was amended in 1949 by a mere addition to Section 13(a) (6) of a new exemption for employees engaged "in connection with the operation or maintenance of ditches, canals, reservoirs, or waterways, not owned or operated for profit, or operated on a share-crop basis, and which are used exclusively for supply and stor[age] of water for agricultural purposes." (c. 736, 63 Stat. 917.) Such was not an amendment of Section 13(a) (6) that in anywise changed the exemption contained in the 1938 Act, as to "any employee employed in agriculture," and retained in that section after amendment. That Congress saw fit to so amend Section 13(a) (6), supra, and place certain specified irrigation company employees within the exemption of the Act, did not in anywise modify or militate against the interpretation given to Section 13(a) (6) as contained in the original Act. The same exemption of "employee(s) employed in agriculture" was retained in 13(a) (6) after the 1949 amendment thereof. Hence the interpretation given to that provision, as made by the Supreme Court, supra, continues after the amendment to be controlling.[2]

The decisions hereinabove referred to have settled the issue of coverage in this case. There is absolutely no legal premise for appellee's inferential assertion that the Secretary has no right to maintain this action, in light of the proviso in Section 16(c) of the Act. (29 U.S.C.A. § 216(c)).

The judgment appealed from is reversed. This cause is remanded to the District Court for further proceedings in accordance herewith.

2. The First Circuit, in a 1950 decision, Puerto Rico Tobacco Co-Operative Association v. McComb, 181 F.2d 697, 700, "categorically rejected on the authority" of the Farmers Irrigation Co., case, supra, a claim of exemption under 13(a) (6), made by a co-operative, premised on the ground that its members were tobacco-growing farmers.