W. Willard WIRTZ, Secretary of Labor, United States Department of Labor, Plaintiff-Appellant and Cross-Appellee,

v.

JACKSON & PERKINS COMPANY, Defendant-Appellee and Cross-Appellant.

No. 128, Docket 27630.

United States Court of Appeals Second Circuit.

Argued Nov. 16, 1962.

Decided Jan. 7, 1963.

Charles Donahue, Sol. of Labor, Jacob I. Karro, Acting Asst. Sol., Jack H. Weiner, Atty., U. S. Dept. of Labor (John A. Hughes, Regional Atty., of counsel), for plaintiff-appellant and cross-appellee.

Hooker, Alley & Duncan, New York City (Irving L. Schanzer, James B. Alley, New York City, of counsel), for defendant-appellee and cross-appellant.

Before SWAN, WATERMAN and FRIENDLY, Circuit Judges.

WATERMAN, Circuit Judge.

This appeal presents several questions concerning the coverage of the agriculture exemption of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq.

The defendant below, Jackson & Perkins Company, operates a large nursery business. From its main establishment near Newark, New York, it sells rosebushes and other nursery stock, both at wholesale and retail, throughout the United States.

As a part of its operations, Jackson & Perkins maintains several "storages" at its Newark establishment. Nursery stock is received there from a variety of sources: (1) defendant's adjoining Newark farms, (2) its farms in Arizona, (3) farms of defendant's wholly-owned subsidiaries in Indiana, California, and New Jersey, (4) farms of wholly independent producers, and (5) farms of independent "contract growers" having continuing supply arrangements with defendant. Once received at the storages, the nursery stock is commingled, checked, trimmed, graded, labeled, and stored. As orders are received, the individual plants are dipped, waxed, wrapped, boxed, and turned over to a carrier for delivery to the customer.

The U. S. Secretary of Labor brought this action to enjoin Jackson & Perkins from violating the minimum wage and overtime provisions of the Act with respect to the employees working in these storages. The district court concluded that the agricultural exemption was applicable to work performed upon stock originating from all but the last of the above five sources. Therefore the court limited the injunction it issued to work performed upon stock grown by independent contract growers. The Secretary of Labor appeals from the limitation of the injunction; defendant cross-appeals from the issuance of any injunction at all. We find no merit in either appeal and affirm the judgment of the court below.

Section 13(a) (6), 29 U.S.C. § 213(a) (6), exempts from the operation of the Fair Labor Standards Act "any employee employed in agriculture." Under Section 3(f), "agriculture" is defined to include " * * * farming in all its branches and among other things includes the cultivation and tillage of the soil, dairying, the production, cultivation, growing, and harvesting of any agricultural or horticultural commodities * * * and any practices (including any forestry or lumbering operations) performed by a farmer or on a farm as an incident to or in conjunction with such farming operations, including preparation for market, delivery to storage or to market or to carriers for transportation to market."

The Secretary of Labor has conceded in his brief that in any workweek in which an employee in defendant's storages worked upon stock grown solely upon Jackson & Perkins' farms in the Newark area, the agriculture exemption would apply. Defendant is not to be denied the exemption, therefore, because of the *type* of work performed by its storage employees. The only question

to be determined is whether the work on stock originating from sources other than defendant's Newark farms is work "performed by a farmer or on a farm as an incident to" defendant's farming operations.

■ If it is clear, as the Secretary concedes, that the exemption applies to work performed in relation to stock from defendant's Newark farms, it is equally clear, we believe, that the exemption must be granted for work on stock from defendant's branch farms in Arizona. Only physical distance separates the Arizona operations from defendant's main establishment in New York. Congress has made clear, however, that the exemption is not limited to practices performed *on* a farm, but extends to practices performed "by a farmer * * * in conjunction with * * * farming operations." Thus, in Walling v. Rocklin, 132 F.2d 3 (8 Cir., 1942), the agriculture exemption was held applicable to employees at a shop where flowers were arranged and sold, despite the fact that the store was located several miles from the employer's greenhouses. And see Mitchell v. Hornbuckle, 155 F.Supp. 205, 211 (D.C.M.D.Ga.1957). The Secretary has cited no persuasive authority to support his claim that the exemption is not similarly applicable to farm operations spread across several thousand miles.

Nursery stock from the defendant's Newark and Arizona sources constituted the bulk of the products handled by defendant's storage workers during the years here at issue: 73.9% in 1955-56, 75.4% in 1956-57, and 78.2% in 1957-58. Most of the remainder of the stock so handled came from the farms of defendant's subsidiaries in Indiana, New Jersey, and California: 22.1% in 1955-56, 17% in 1956-57, and 17.7% in 1957-58. The court below ruled that work performed by defendant's employees with respect to these products was within the "agriculture exemption" of § 13(a) (6). We agree.

Defendant's farming operations in New Jersey, California, and Indiana are conducted, respectively, through three subsidiary corporations wholly owned by Jackson & Perkins. The officers and directors of both parent and subsidiaries are the same. All advertising is done in the name of Jackson & Perkins. All orders for products are received and invoiced in defendant's name. Although some stock is shipped directly to customers by the subsidiary corporations, most of it is sent to the Newark storages where it is commingled and prepared for shipment.

■ We find nothing in the language or history of the Fair Labor Standards Act to suggest that Congress intended the availability of the agricultural exemption to turn upon the technicalities of corporate organization within which farming operations or practices performed incidental thereto were conducted. In explaining the bill to the Senate, Senator Black, dealing with the agricultural exemption, stated:

"The bill specifically and unequivocally excludes certain industries and certain types of business from its scope and effect. It specifically excludes workers in agriculture of all kinds and all types. There is contained in the measure, perhaps, the most comprehensive definition which has been included in any one legislative proposal." 81 Cong.Rec. 7648.

Moreover, as stated by Mr. Justice Clark in Maneja v. Waialua Agricultural Co., Ltd., 349 U.S. 254, 261, 75 S.Ct. 719, 724, 99 L.Ed. 1040 (1955):

"Nowhere in the Act was any attempt made to draw a distinction between large and small farms or between mechanized and nonmechanized agriculture."

Jackson & Perkins operates one of the largest nursery businesses in the United States. In doing so it employs subsidiary corporations whose functions are uniquely integrated into the over-all agricultural enterprise. Under these circumstances, a denial of the agricultural ex-

emption to work done at the Newark storages on stock coming from defendant's subsidiary farms would thwart the inclusive intent of Congress in enacting the exemption.

During the three years here involved 2.2%, 5.7%, and 1.2% respectively of the total stock stored and handled in defendant's Newark storages initially came from the farms of independent farmers and were purchased by defendant on an emergency basis. The Secretary of Labor contends that as to these products, Jackson & Perkins was acting not as a farmer but as a jobber for the nursery stock of independent growers.

■ Were any significant portion of the stock handled in defendant's storages purchased from such independent sources, it is clear that the agriculture exemption would not apply, for the exemption is inapplicable to services performed by employees of mere distributors of agricultural products. Mitchell v. Hunt, 263 F.2d 913 (5 Cir., 1959). Here it is uncontroverted that Jackson & Perkins purchased stock from independent growers only insofar as such purchases were necessary to make up for temporary shortages due to defendant's own crop failures. Defendant's products are not manufactured, but are products of the soil, subject to the caprices of nature. Thus, when defendant, because of adverse weather conditions or blights, finds itself unable to fill orders for certain types of advertised stock, emergency purchases are made to make up for the unforeseen shortages.

■ Under these circumstances we agree with the trial court that work, during the questioned years, upon stock from these sources was incidental to and performed in conjunction with defendant's farming operations, and that such work is not outside the agriculture exemption. Walling v. Rocklin, 132 F.2d 3, 7 (8 Cir., 1942); Mitchell v. Hornbuckle, 155 F. Supp. 205, 211 (D.C.M.D.Ga.1957); Damutz v. William Pinchbeck, Inc., 158 F.2d 882, 170 A.L.R. 1246 (2 Cir., 1946).

■ We come finally to a consideration of defendant's cross-appeal, and to that portion of the judgment below concerning services performed with respect to stock handled in defendant's storages purchased from independent growers under continuing supply contracts with the defendant. Although these purchases during the three years here involved (1.8% in 1955–56, 1.9% in 1956–57, 2.9% in 1957–58) represented an even smaller proportion of defendant's gross business than the purchases discussed above that defendant made from wholly independent growers, the trial court found that services performed on stock from such "contract growers" was not within the agriculture exemption of the Act. We agree. The purchases from these contract growers were not sporadic, occasional transactions made in order to supply deficiencies in defendant's stock caused by such emergency occurrences as crop failures, but, rather, these contractual arrangements provided a continuing annual supply of stock and the contracts were renewed from year to year as part of the defendant's regular course of business. It is not significant that Jackson & Perkins provided understock to these contract growers which was planted and cultivated by them. The growers provided the land, labor and equipment, and agreed to indemnify defendant for any claims arising out of the farming operations. The growers bore any losses due to crop failures, save for the cost of the original understock, and the developed stock was sold by them to the defendant at a price calculated per saleable plant.

As to the stock purchased from these contract growers, therefore, Jackson & Perkins acted as a jobber rather than as a farmer, and hence services performed in handling such stock in the Newark storages were not services within the agriculture exemption of § 13(a) (6). Mitchell v. Huntsville Wholesale Nurseries, Inc., 267 F.2d 286 (5 Cir., 1959).

Affirmed.