James D. HODGSON, Secretary of Labor, United States Department of Labor, Plaintiff-Appellee,

v.

IDAHO TROUT PROCESSORS COMPANY, a corporation, Defendant-Appellant.

No. 72-2415.

United States Court of Appeals, Ninth Circuit.

May 21, 1974.

Dale Clemons, Randall C. Fredricks, of Clemons, Cosho, Humphrey & Samuelsen, Boise, Idaho, for defendant-appellant.

Donald S. Shire, Carin Ann Claus, Richard F. Schubert, U. S. Dept. of Labor, Washington, D. C., Altero D'Agostini, Alfred G. Albert, Alan M. Raznick, Dept. of Labor, San Francisco, Cal., for plaintiff-appellee.

Before KOELSCH, WALLACE and SNEED, Circuit Judges.

## OPINION

PER CURIAM:

This appeal concerns § 13(a)(6) of the Fair Labor Standards Act (29 U.S. C. § 213(a)(6)), the provision which exempts employers of "employees employed in agriculture" from the wage and hour requirements of the Act (29 U.S.C. §§ 206 and 207). More specifically, the question is whether the district court erred in determining that employees of Idaho Trout Processors Company (Trout Processors) were within the purview of the Act and hence Trout Processors was liable to them for back pay.

Trout Processors was incorporated in 1959 under the laws of Idaho, as a nonexempt cooperative corporation, for the purpose of cleaning, processing, freezing, packing, and marketing trout raised by the three member trout farms. Rainbow Trout Farm, Canyon Trout Farm and Frame Trout Farm are the three stockholders. Trout Processors regularly employs from 7 to 15 employees, whose labors are confined to the processing plant and not to the actual raising of trout. Earl M. Hardy is president and treasurer of Trout Processors and also one of the shareholders of Rainbow Trout Farm.

Trout Processors leases the land for its plant from Kaybar Corporation, whose sole shareholder, is Earl M. Hardy. The land upon which the plant is situated adjoins Rainbow Trout Farm 1. Rainbow Trout Farm, pursuant to a management agreement, is paid a five per cent fee for managing the affairs of Trout Processors, part of which fee is paid directly to Earl M. Hardy.

After deducting the processing and marketing expenses of Trout Processors, the proceeds of trout sales are distributed to the three member farms based upon a percentage derived by dividing the number of pounds of trout processed from each member by the total number of pounds of trout processed.

In Farmers, etc., Irrigation Co. v. McComb, 337 U.S. 755, 69 S.Ct. 1274, 93 L.Ed. 1672 (1949), the Supreme Court elucidated the meaning of the word "agriculture" as defined in § 3(f) of the Act (29 U.S.C. § 203(f).[1] As the Court pointed out at 762–763, the statutory definition of the term has two distinct "branches": (1) a primary meaning which includes farming in all its branches, such as cultivation and tillage of soil, growing and harvesting of crops, and (2) a secondary meaning which includes other farm practices, but only if they are performed by a farmer or on a farm.

The activities of Trout Processors' employees do not fall within the primary meaning because they do not consist of any of the elemental farming operations

---

[1]. Section 3(f) of the Fair Labor Standards Act, 29 U.S.C. § 203(f), provides in pertinent part as follows:

"(f) 'Agriculture' includes farming in all its branches and among other things includes the cultivation and tillage of the soil, dairying, the production, cultivation, growing, and harvesting of any agricultural or horticultural commodities

* * *, the raising of livestock, bees, fur-bearing animals, or poultry, and any practices * * * performed by a farmer or on a farm as an incident to or in conjunction with such farming operations, including preparation for market, delivery to storage or to market or to carriers for transportation to market."

**60**

set forth in § 3(f) of the Act. The employees neither cultivate nor raise anything; their labor consists solely of processing operations.

Nor do their activities come within the secondary meaning, for the work is not performed "by a farmer or on a farm" as an incident to or in conjunction with farming operations. The employees work for Trout Processors, not the farms, and their work is performed entirely on the land of Trout Processors' plant.

Trout Processors argues, however, that its processing operation is so integrated with the farming activities of the three farms that it is still a part of the over-all farming function. We are not persuaded.

In *Farmers, etc., Irrigation Co., supra,* the controlling fact was that the company had been set up by the farmers as an independent entity to operate an integrated, unitary water supply system. The Court observed at 768;

> "There is a difference between the hiring of mutual servants by a group of employers and the creation by them of a separate business organization, with its own officers, property, and bonded indebtedness, which in turn hires working men. Those working men are in no real sense employees of the shareholders of the organization. They are hired by the organization, fired by the organization, controlled and directed by the organization, and paid by it."

From the stipulation of facts it appears that Trout Processors was set up as an independent entity to clean, process, freeze, pack, and market trout from the three member farms and others, that its employees are employed directly by it, and that the member farms do not interfere with its operations. The case is thus governed by *Farmers, etc., Irrigation Co.*

Trout Processors' reliance on Dofflemyer v. N.L.R.B., 206 F.2d 813 (9th Cir. 1953), is misplaced. In that decision, this court held that workers in a packing shed, who picked grapes grown by their three employers, came within the agricultural exemption. As we pointed out in distinguishing *Farmers, etc., Irrigation Co.,* the operation of the packing shed in *Dofflemyer* was an "informal family enterprise" wherein the three employers ran both the production of grapes and their preparation for market, and the packing shed employees did not exclusively work in the shed but performed part of their duties in the fields. Thus it was "unrealistic to view the partnership as a separate legal entity apart from the individuals who made it up." 206 F.2d at 814.

In this case, however, Trout Processors' employees work exclusively for the processing plant, there is a formal separation and division of function between the plant and the farms, and the farms do not supervise the plant, nor do they hire, fire, or pay Trout Processors' employees. In short, this case is governed by *Farmers, etc., Irrigation Co.*

The judgment is affirmed.