[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
January 17, 2003
THOMAS K. KAHN
CLERK

_____

No. 02-10576
_____

D.C. Docket No. 00-01511-CV-PAS

ADAN ARES,

Plaintiff-Appellant,

versus

MANUEL DIAZ FARMS, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(January 17, 2003)**

Before EDMONDSON, Chief Judge, ANDERSON, Circuit Judge, and POGUE [*],
Judge.

POGUE, Judge:

Appellant Adan Ares challenges the district court's determination, upon

granting defendant's motion for summary judgment, that Ares was an exempt

agricultural employee under the Fair Labor Standards Act, 29 U.S.C. § 213(b)(12),

_____

[*] Honorable Donald C. Pogue, Judge, United States Court of International Trade, sitting by
designation.

and therefore not entitled to claim overtime wages.[2] This Court exercises jurisdiction over this appeal under 28 U.S.C § 1291. For the reasons expressed below, we affirm the district court's decision.

I.

Adan Ares was employed by Diaz Landscaping and Nursery, Inc. ("Diaz Landscaping"), a Florida corporation owned and operated by Manuel Diaz ("Diaz"). Diaz also owns Diaz Farms, Inc. ("Diaz Farms"), a Florida corporation engaged in the business of cultivating, harvesting, and selling plants and trees.[3]

Diaz Landscaping owns land used for agricultural purposes, all of which is leased to Diaz Farms for use in its plant cultivation operations. Additionally, Diaz Landscaping was the employer of record of all employees working at Diaz Farms from 1997 through 1999. Diaz Landscaping paid payroll expenses for employees working at Diaz Farms, and Diaz Farms reimbursed Diaz Landscaping for those costs. Diaz Landscaping was not actively involved in agriculture and had no function or activity other than to lease land and employees to Diaz Farms.

---

[2] In his appeal, Ares also challenges the district court's denial of his motion to issue opt-in notices in order to treat his action to recover unpaid wages under 29 U.S.C. § 216(b) as a class action. Order Denying Pl.'s Renewed Mot. to Issue Opt-In Notices, App. D. The court declined to issue such notices on the ground that Appellant offered no evidence establishing the existence of similarly situated employees. As we decide that Appellant is an exempt agricultural employee, this second claim is moot, and we do not reach it.

[3] Diaz also owns land individually, some of which is cultivated by Diaz Farms, and he is a partner in the Manuel Diaz and Amelia Diaz Partnership, which leases land to Diaz Farms.

Diaz Farms cultivates trees, including palm and fruit trees, and ornamental plants. The "mainstay of the farm is raising field grown trees," Dep. of Manuel Diaz at 22, and the farm sells trees and plants in Florida and at times in other states and foreign countries. Diaz Farms sells only its own produce; it does not purchase plants to resell.[4] The farm includes a plant nursery, areas for tree cultivation, numerous animals, and stables. Manuel Diaz and his family live in a house surrounded by the farm. Diaz receives the farm's clients at the house and manages the farm's business from a home office.

Ares asserted that the Diaz enterprises employed approximately 90 employees who worked fifty to sixty hours each week and were not paid overtime wages. Ares claimed that Diaz Landscaping was an independent corporation engaged in leasing land and employees, rather than in agricultural work, and therefore its employees did not fall within the agricultural employee exception to the overtime wage provisions of 29 U.S.C. § 207(a).

The district court found that Diaz Farms and Diaz Landscaping were so intertwined as to constitute a single agricultural enterprise which is exempt from the requirement to pay overtime wages, and that Ares was employed in agriculture within

_____

[4] The deposition testimony indicated that perhaps twice in six years Diaz Farms purchased plants to fill a customer's order. The plants were native to California and Diaz Farms did not grow them. Dep. of Lourdes Rodriguez at 8.

3

the meaning of 29 U.S.C. § 213(b)(12).

This Court reviews de novo the district court's grant of summary judgment. Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1225 (11th Cir. 1999).

II.

Under the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq., an employee "engaged in commerce or in the production of goods for commerce," or "employed in an enterprise engaged in commerce or in the production of goods for commerce" must be paid for hours worked over forty hours per week "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). Title 29 U.S.C. § 213(b)(12) provides that the requirements of section 207 shall not apply to "any employee employed in agriculture."

Agriculture, within the meaning of the Act, has two distinct branches: "(1) a primary meaning which includes farming in all its branches, such as cultivation and tillage of soil, growing and harvesting of crops, and (2) a secondary meaning which includes other farm practices, but only if they are performed by a farmer or on a farm." Hodgson v. Idaho Trout Processors Co., 497 F.2d 58, 59 (9th Cir. 1974) (citing Farmers Reservoir & Irrigation Co. v. McComb, 337 U.S. 755, 762-63 (1949)). The secondary practices must be performed "incidently to or in conjunction with such

4

farming operations." Farmers Reservoir & Irrigation Co., 337 U.S. at 763. Farming includes horticulture. 29 U.S.C. § 203(f).

No Eleventh Circuit case addresses the issue before us. Other circuits, however, have addressed this issue. In Wirtz v. Jackson & Perkins Co., 312 F.2d 48 (2d Cir. 1963), defendant Jackson & Perkins Company, a nursery which operated farms in several states and a storage center in New York, received shipments of products from the farms and prepared them for sale. 312 F.2d at 49-50. Several farms were operated as wholly-owned subsidiary corporations. Id. at 50. As the company "employ[ed] subsidiary corporations whose functions [were] uniquely integrated into the over-all agricultural enterprise," id., the agricultural exemption applied equally to the several farms and to the work done at the storage center.[5] Id. at 51. The court stated, "[w]e find nothing in the language or history of the Fair Labor Standards Act to suggest that Congress intended the availability of the agricultural exemption to turn upon the technicalities of corporate organization within which farming operations or practices performed incidental thereto were conducted." Id. at 50.

---

[5] As to stock purchased from other farmers and packaged for sale at the Jackson & Perkins storage center, however, the agricultural exemption did not apply. With regard to that stock, Jackson "acted as a jobber rather than as a farmer" because it did not grow the products and the work done to prepare it for sale was not incidental to its agricultural activities. Jackson & Perkins Co. at 51; see also Adkins v. Mid-Am. Growers, Inc., 167 F.3d 355 (7th Cir. 1999) (to the extent that a nursery purchased plants from other growers for resale, it was acting as a wholesaler rather than a farmer, and such activity is not exempt from the FLSA).

Similarly, in <u>Dofflemyer v. NLRB</u>, 206 F.2d 813 (9th Cir. 1953), the Ninth Circuit found that the operations of a grape packing shed and storage plant fell within the agricultural exception. The shed and plant were operated to pack the grapes grown on the adjoining farm. The proprietors of both the farm and the packing operation were three partners who were also family members, and the shed and plant packed only the produce from the partners' farm. The court found that these packing operations were carried on "by farmers and on a farm. They were carried on in conjunction with and incidental to the farming operations." <u>Id.</u> at 814; <u>see also</u> <u>Maneja v. Waialua Agric. Co., Ltd.</u>, 349 U.S. 254, 260-62 (1955) (holding that railroad workers who transported workers, tools, and sugar cane on a sugar cane plantation were exempt agricultural employees); <u>Brennan v. Sugar Cane Growers Coop. of Fla.</u>, 486 F.2d 1006, 1007-08, 1011 (5th Cir. 1973) (holding that cooks and attendants who prepared meals and maintained living facilities at a camp for sugar cane plantation workers, which camps were located at or adjacent to the plantations, were within the agricultural exemption).

By contrast, courts have declined to extend the agricultural exemption to entities that perform separate, self-contained services and operate independently from the agricultural enterprises they serve. <u>See</u> <u>Farmers Reservoir & Irrigation Co.</u>, 337 U.S. at 767-68; <u>see also</u> <u>Hodgson v. Idaho Trout Processors Co.</u>, 497 F.2d at 60;

Goldberg v. Crowley Ridge Fruit & Vegetable Growers Ass'n, 295 F.2d 7 (8th Cir. 1961).

In the instant case, Manuel Diaz owns both Diaz Farms and Diaz Landscaping. Diaz lives on the farm, manages the farm from a home office, and entertains farm clients at his house. Diaz's deposition testimony indicates that he considers the house, farm, and corporations as part of a single farm enterprise. The record shows that the sole function of Diaz Landscaping is to lease land and employees to, and thereby support the operations of, Diaz Farms. Additionally, Diaz Farms sells only its own products. Cf. Marshall v. Gulf & Western Indus., Inc., 552 F.2d 124, 126 (5th Cir. 1977) (holding that because a tomato packing plant packed tomatoes grown by other producers in addition to its own products, it could not claim the agricultural exemption). Here, as in Jackson & Perkins, the separate entities are "uniquely integrated into the over-all agricultural enterprise." 312 F.2d at 50. As in Dofflemyer, "[w]hat we have here is little more than an informal family enterprise. The same [individual] . . . appear[s] as the sole moving character[]" in all its operations. Dofflemyer, 206 F.2d at 814. Contrary to the situation in Farmers Reservoir & Irrigation Co., the employees of Diaz Landscaping were in a "real sense" employees of the sole proprietor of the organization by which they were hired. It is unrealistic to view Diaz Landscaping as an independent entity, separate from Diaz Farms.

7

Rather, these entities are essentially interdependent components of a family business. We are persuaded by the reasoning of the Second Circuit in <u>Wirtz v. Jackson & Perkins Co.</u> that the availability of the agricultural exemption should not "turn upon the technicalities of corporate organization." 312 F.2d at 50. As Diaz Landscaping and Diaz Farms are integrated components of an agricultural enterprise, we hold that the agricultural exemption provision of 29 U.S.C. § 213(b)(12) applies to the employees of Diaz Landscaping.

### III.

As an employee of the Diaz enterprise, Ares's duties included fumigating the entire area of the farm, including the house, and treating weeds around the plants on the farm. Fumigation to protect plants from pests is an activity performed incidently to and in conjunction with farming practices. As Ares's tasks were performed on a farm and involved farm practices incidental to the primary agricultural tasks of cultivation, they fell within the definition of secondary agriculture. Consequently, Ares was an agricultural employee within the meaning of the Fair Labor Standards Act, and exempt from the overtime wage provisions under 29 U.S.C. § 213(b)(12).[6]

For the foregoing reasons, the judgment of the district court is

---

[6] The fact that some of the fumigating was done in the area around Diaz's house does not defeat the exemption, as the house is situated on the farm, houses the farm's business management office, and is used to receive the farm's clients.

AFFIRMED.