Christopher E. **OLSON**, Plaintiff,

v.

**STAR LIFT INC., a Florida corporation, and Yovani Dominguez, an individual, Defendants.**

Case No.: 09–21500–CIV.

United States District Court,
S.D. Florida,
Miami Division.

April 30, 2010.

Robert Scott Norell, Robert S. Norell PA, Plantation, FL, for Plaintiff.

Chris Kleppin, Glasser Boreth & Kleppin, Plantation, FL, for Defendants.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JOSE E. MARTINEZ, District Judge.

THIS CAUSE came before the Court upon a bench trial held on April 16 and 19, 2010 before the undersigned and upon Defendants' oral Rule 50 motion.[1] Plaintiff's amended complaint alleges that the Defendants, Star Lift, Inc. ("Star Lift") and Yovani Dominguez ("Dominguez") (collectively "Defendants"), violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207, by failing to pay him overtime as required by law. Having duly considered all the evidence and the arguments, the Court finds for Defendants and against Plaintiff.

### Findings of Fact[2]

1. Defendant Star Lift is a forklift repair company, and Defendant Dominguez is its president. (Rough Transcript April 16, 2010 morning session ("Tr. 4/16 a.m.") at 15.) Star Lift's annual revenue was at least $500,000 for the relevant period of time. (Tr. 4/16 p.m. at 9.)

2. Plaintiff worked for Defendants during the relevant period as a forklift technician. This work was an integral part of Defendants' business.

3. One of Defendants' clients was Caterpillar, Inc.'s Miami distribution center ("Caterpillar"), which ships Caterpillar products worldwide. (Tr. 4/16 p.m. at 2,

---

**1.** Strictly speaking, a Rule 50 motion is not properly brought before the Court in a nonjury trial. *See* Fed.R.Civ.P. 50(a)(1) ("[i]f a party has been fully heard on an issue during a *Jury trial* ....") (emphasis added); *Johnson v. Wyant*, 362 Fed.Appx. 956, 957 n. 2 (11th Cir.2010) ("Rule 50 ... only applies injury trials"). The Court will, however, construe the motion as a motion for judgment on partial findings pursuant to Federal Rule of Civil Procedure 52(c).

**2.** To the extent that the Findings of Fact are more properly characterized as Conclusions of Law, and vice versa, the undersigned intends that they be considered as such.

3.) There is no evidence in the record indicating that any goods are produced for commerce in the Caterpillar distribution center.

4. Caterpillar had about 70 to 80 forklifts, which it used to load and unload the products it ships. (Tr. 4/16 p.m. at 3.) The forklifts themselves were not moved in commerce. On any given day, roughly two or three of those forklifts needed some form of repair and another two or three needed preventative maintenance. (Tr. 4/16 p.m. at 5.)

5. Star Lift technicians, such as Plaintiff, did not operate the forklifts when the forklifts were used to load and unload products. (Tr. 4/16 p.m. at 4.) Star Lift technicians only repaired and maintained the forklifts. *Id.*

6. In addition to Star Lift, Caterpillar also employs another company, Kelly Tractor, to service and maintain the forklifts. *Id.* Other companies in the community also provide those services. (Tr. 4/16 p.m. at 5.)

7. Defendants did not produce or manufacture any goods. (Tr. 4/16 p.m. at 48.)

8. No evidence at trial established that Defendants regularly and recurrently sold parts. Similarly, no evidence at trial established that two or more Defendants regularly and recurrently bought parts from companies outside Florida or handled parts purchased outside Florida. Furthermore, no evidence at trial established that any of the forklifts Defendants repaired or maintained were ever shipped out of Florida. (Tr. 4/16 p.m. at 48.)

9. Star Lift provided all its workers, even clerical workers, with 1099 independent contractor tax returns rather than W–2s. (Tr. 4/16 a.m. at 18.)

10. Defendants decided whether Plaintiff would work all day at Caterpillar or whether he would leave to work for another client in the middle of the day. (Tr. 4/16 p.m. at 41.) Defendants also required Plaintiff to punch in by 7:30 a.m. (Tr. 4/16 a.m. at 19–20); (Tr. 4/19 a.m. at 4). Defendants also would reprimand technicians such as Plaintiff for failing to work at the required times or on the required days. (Tr. 4/16 p.m. at 28, 72.) Plaintiff's work off-site was unsupervised, however.

11. Forklift repair requires skill, but the type of forklift work Plaintiff did is relatively simple and can be learned with two and a half months of on-the-job training. (Tr. 4/16 p.m. 38–39, 62–63); (Tr. 4/19 a.m. at 6).

12. No evidence in the record conclusively established that Plaintiffs managerial skill could afford him an opportunity for profit or loss. Forklift technicians could not employ their own workers and they received worker's compensation coverage through Star Lift. (Tr. 4/16 a.m. at 38, 43–44) (Tr. 4/16 p.m. at 7). Nonetheless, the findings about Defendants' billing practices suggest that if Plaintiff worked faster, he could make more money.

13. Forklift technicians had to invest in their own tools. (Tr. 4/16 p.m. at 39.) Defendants purchased the first tools for them, and the technician had to pay Defendants back for those tools. (Tr. 4/16 p.m. at 64.) Star Lift provided vehicles, gasoline, and tolls. (Tr. 4/16 p.m. at 67.)

14. Technicians had to wear a Star Lift uniform with the technician's name on it. (Tr. 4/16 p.m. at 63.)

15. The hours reflected on Plaintiffs time sheet were not accurate. Sometimes they were inaccurate because forklift technicians were instructed to put down standard times for certain jobs and activities, such as putting a minimum of an hour down for any travel time, which often resulted in the time sheets reflecting a number of hours greater than the technician actually worked. (Tr. 4/16 p.m. at 26, 46–47); (Tr. 4/19 a.m. at 10, 27–28, 41–42, 56,

94–95, 98–99). Like the other technicians, Plaintiff sometimes came in at 7:30 a.m. and billed eight hours before lunch. (Tr. 4/19 a.m. at 28.) The timesheets were also inaccurate because they reflected that Plaintiff worked inside a client's place of business for hours after that client's business was closed. (Tr. 4/16 p.m. at 27–28); (Tr. 4/19 a.m. at 103, 109–10, 113).

16. Regardless of the time on the timesheets, based on the testimony in trial, the Court finds that Plaintiff usually came into work at 7:30 a.m., took at least an hour for lunch, and left between 3:30 p.m. and 5:00 p.m. He did not work more than 40 hours in any workweek. (Tr. 4/16 p.m. at 47); (Tr. 4/19 a.m. at 28, 29–32, 93); (Tr. 4/19 p.m. 16–17, 35, 38).

## Conclusions of Law

### A. Individual and Enterprise Coverage

1. The FLSA applies to any employee who is "engaged in commerce or in the production of goods for commerce," regardless of whether the enterprise that employs him is engaged in commerce under the statute. 29 U.S.C. § 207(a)(1). This is called "individual coverage." *Ares v. Manuel Diaz Farms, Inc.*, 318 F.3d 1054, 1056 (11th Cir.2003).

2. The FLSA applies to any employer engaged in an "enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 207(a)(1). This is called "enterprise coverage." *Ares*, 318 F.3d at 1056.

3. Under individual or enterprise coverage, employees must receive one and one-half times their regular pay rate for time worked in excess of 40 hours per week. 29 U.S.C. § 207(a)(1).

4. "For individual coverage to apply under FLSA, [Plaintiff] must [show] that he was (1) engaged in commerce or (2) engaged in the production of goods for commerce." *Thorne v. All Restoration Services, Inc.*, 448 F.3d 1264, 1267 (11th Cir.2006) (citing 29 U.S.C. § 207(a)(1)).

5. "[F]or an employee to be 'engaged in commerce' under the FLSA, he must be directly participating in the actual movement of persons or things in interstate commerce by (i) working for an instrumentality of interstate commerce, e.g., transportation or communication industry employees, or (ii) by regularly using the instrumentalities of interstate commerce in his work, e.g., regular and recurrent use of interstate telephone, telegraph, mails, or travel." *Id.* at 1267 (citing 29 C.F.R. § 776.23(d)(2)).

6. "Where employees' activities [are] related to interstate instrumentalities or facilities, such as bridges, canals and roads, [courts] have used a practical test to determine whether they are 'engaged in commerce.' The test is 'whether the work is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated local activity.'" *Mitchell v. Lublin, McGaughy & Associates*, 358 U.S. 207, 212, 79 S.Ct. 260, 3 L.Ed.2d 243 (1959) (internal citations omitted).

7. The former Fifth Circuit "has consistently held that the work of maintenance employees in the office buildings occupied by tenants a substantial number of whom are there engaged wholly or in part in interstate commerce, but who do not there produce goods for interstate commerce, is too remote from the 'in commerce' activities of such tenants as to cause such employees to be covered by the Act." *Tobin v. Girard Properties, Inc.*, 206 F.2d 524, 527 (5th Cir.1953) (internal citations omitted)[3]; *but see Kirschbaum v.*

---

**3.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

*Walling,* 316 U.S. 517, 525–26, 62 S.Ct. 1116, 86 L.Ed. 1638 (1942) (holding that maintenance workers in a building that did produce goods for interstate commerce were covered under the FLSA). The maintenance in this case, where the Caterpillar facility did not produce goods for commerce, resembles *Tobin* rather than *Kirschbaum.*

■ 8. Because Plaintiff never operated the forklifts while they were loading or unloading goods, Plaintiff's work in repairing a handful of forklifts in a 70–80 forklift fleet, forklifts which did not move in interstate commerce themselves, is too attenuated a connection to be "directly and vitally related to the functioning of an instrumentality or facility of interstate commerce." *See Mitchell,* 358 U.S. at 212, 79 S.Ct. 260.[4] Instead, Plaintiff's repair and maintenance work represented an "isolated local activity," which only indirectly affects commerce and does not entitle him to individual coverage. *See id.*; *see also Milbourn v. Aarmada Protection Systems 2000, Inc.,* 588 F.Supp.2d 1341 (S.D.Fla. 2008) ("[E]mployees of independent contractors are not engaged in the production of goods for commerce 'merely because the customers of the employer happen to include producers of goods for commerce'") (quoting *Thorne,* 448 F.3d at 1268).[5]

■ 8. For the purpose of enterprise coverage, the FLSA defines an "enterprise engaged in commerce or in the production of goods for commerce" as an enterprise that "has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and that "is an enterprise whose annual gross volume of sales made or business done is not less than $500,000." 29 U.S.C. § 203(s)(1)(A).

9. Specifically, in order to have enterprise coverage, a business must "regularly and recurrently ha[ve] at least two or more employees engaged in [handling, selling, or otherwise working on goods that have been moved in or produced for commerce]." 29 C.F.R. § 779.238. Because no evidence produced at trial established that Defendants had two or more employees regularly and recurrently engaged in handling, selling, or otherwise working on goods that have been moved in or produced for commerce, there is no enterprise coverage in this case.

## B. Plaintiff's Employee or Independent Contractor Status

■ 10. The FLSA's overtime provisions only apply to employees, not to independent contractors. *Perdomo v. Ask 4 Realty & Management, Inc.,* 298 Fed. Appx. 820, 821 (11th Cir.2008).

11. To determine whether Plaintiff "was an employee or an independent contractor, we must apply the multi-factor economic realities test." *Id.* (citing *Antenor v. D & S Farms,* 88 F.3d 925, 933 (11th Cir.1996)). "No one factor is determinative, and each factor should be given weight according to how much light it sheds on the nature of the economic dependence of the putative employee on the employer." *Id.* The factors include:

---

**4.** The Court notes that Plaintiff has not asserted that Caterpillar produced goods for commerce at the distribution center or that Plaintiff's maintenance work qualified him for individual coverage as someone who produced goods for commerce.

**5.** The Court acknowledges that this is a close issue. Accordingly, the Court will not enter judgment on partial findings and will make factual findings and legal conclusions in the alternative, despite the lack of enterprise or individual coverage.

(1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed;

(2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;

(3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers;

(4) whether the service rendered requires a special skill;

(5) the degree of permanency and duration of the working relationship; and

(6) the extent to which the service rendered is an integral part of the alleged employer's business.

*Freund v. Hi–Tech Satellite, Inc.,* 185 Fed. Appx. 782, 783 (11th Cir.2006).

■ 12. In this case, numerous factual findings weigh in favor of finding that Plaintiff was an employee, including that Defendants controlled what time Plaintiff went to work and whether he worked all day at Caterpillar or went to other clients of their choosing; that he wore a Star Lift uniform; that Defendants provided his van, gas, and transportation expenses; that Plaintiff was unable to hire workers to help him; that the skills involved were simple enough to be learned by a few weeks of on-the-job training; and that the services he rendered were an integral part of Star Lift's business. Furthermore, it appears that Plaintiff received all his insurance coverage, including liability insurance, through Star Lift. The Court finds that the fact that Plaintiff received an 1099 does not weigh in favor of him being an independent contractor, because Defendants provided even clerical workers with 1099s. Only three factual findings weigh against finding Plaintiff was an employees, namely that Plaintiff had to buy his own tools; that he performed much repair work unsupervised; and that he could be paid for more "hours" in a day if he worked faster. After examining all the facts, the Court concludes that Plaintiff was economically dependent on Defendants and was an employee.

### C. Conclusions Regarding Overtime

13. The burden of proof applicable in determining whether an employee is entitled to back pay under the FLSA is as follows:

[A]n employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

*Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687–88, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946) (citation omitted); *accord Donovan v. New Floridian Hotel, Inc.,* 676 F.2d 468, 471 (11th Cir.1982).

14. Applying the standard above, the Court concludes that Plaintiff has not carried his burden to prove he in fact performed work for which he was improperly compensated, and the Court further finds that Defendants produced evidence to negative the reasonableness of the inference to be drawn from the evidence that Plaintiff did put forward. Accordingly, it is

**ORDERED AND ADJUDGED** that

1. The Court finds for Defendants and against Plaintiff with respect to Plaintiffs claims for unpaid overtime pursuant to the

FLSA. Final Judgment shall be entered by separate order.