Jesus CERDA et al.,
Plaintiffs-Appellants,

v.

Jose BRAVO, d/b/a Bravo Labor Agency, and the Packerland Packing Company of Chippewa Falls, Wisconsin, Defendants-Appellees.

No. 76–3614.

United States Court of Appeals,
Fifth Circuit.

June 22, 1978.

---

James A. Herrmann, Texas Rural Legal Aid Inc., Harlingen, Tex., for plaintiffs-appellants.

James S. Bates, Edinburg, Tex., for Jose Bravo, Etc.

Hugo Swan, Jr., Fort Smith, Ark., John William Black, Brownsville, Tex., for Packerland Packing Co.

Before BROWN, Chief Judge, AINSWORTH and VANCE, Circuit Judges.

AINSWORTH, Circuit Judge:

Plaintiffs, who consist of sixteen migrant farm workers, seek declaratory and injunctive relief and damages under the Farm Labor Contractor Registration Act of 1963, 7 U.S.C. § 2041 *et seq.* (1970), against defendants Jose Bravo and Packerland Packing Company of Chippewa Falls, Wisconsin. Plaintiffs also assert pendant claims for violations of the Texas Farm Agency Law, Vernon's Tex.Stat.Ann., Art. 5221a–5 *et seq.* The district court dismissed the complaint for failure to state a claim on which relief could be granted and plaintiffs appeal.

In October 1973 defendant Packerland contacted Jose Bravo, a labor contractor in Hidalgo, Texas, to recruit workers for employment at the Packerland plant in Chippewa Falls, Wisconsin. The Packerland facility was a custom slaughter house for beef animals. Packerland did not own the animals slaughtered and the processed beef was normally sold by Packerland's clients. Plaintiffs were recruited by Bravo for employment in meat cutting production jobs at the Chippewa Falls plant. Before leaving Texas for Wisconsin the workers received a written statement of the terms of employment including salary and living conditions. The written statement further indicated that the plant where the men would be working was being picketed.[1] Upon their arrival in Chippewa Falls plaintiffs discov-

---

1. The workers recruited by Bravo signed a form stating, in both English and Spanish, the conditions of employment at the Packerland plant. The English portion of the form reads as follows:

WE TEACH FREE
YOU EARN $2.70 PER HOUR AS YOU LEARN
YOU ADVANCE AS YOU LEARN
YOUR HOURLY RATES INCREASE AFTER YOU LEARN
TIME AND ONE HALF OR $4.05 PER HOUR FOR ALL HOURS OVER 40 IN ANY WEEK'S TIME
GOOD BEDS GOOD FOOD (SPANISH) RECREATION
STEADY WORK IF YOU LEARN AND PROVE YOU ARE A GOOD EMPLOYEE
BOARD & ROOM $0 PER WEEK
YOU PAY FOR YOUR COVERALLS
WE HAVE EIGHT PLANTS
PEOPLE ARE PICKETING THE PLANT WHERE YOU WILL GO
THIS IS THE ONLY PLANT WE HAVE WITH A DORMITORY FOR PEOPLE TO TRAIN
WE DON'T WANT TROUBLE
WE ASK THAT YOU STAY WITH US ON THE PLANT GROUNDS
THE JOB IS PERMANENT, NO SEASONAL: PAID WEEK'S VACATION AFTER ONE YEAR
TRANSPORTATION OF SIXTY DOLLARS WILL BE CHARGED

ered that a serious labor dispute was in progress. Because of the strike police protection was required while the men were at the plant. Plaintiffs also found the housing facilities inadequate. Because of these conditions plaintiffs left Chippewa Falls two days after their arrival there and returned to Texas. They were paid for their work as well as transportation expenses. In this suit plaintiffs alleged that they suffered economic loss and injury as a result of misrepresentations concerning these conditions at the Packerland plant.

Plaintiffs' suit is based on the premise that the Farm Labor Contractor Registration Act of 1963 provides a private right of action for farm workers injured through the failure to comply with its provisions. Since the Act does not explicitly grant such a right, this Court is asked to hold that a remedy is implied under the statute pursuant to the standards set forth in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). However, it is not necessary that we reach the question of implied remedy in this case since plaintiffs lack standing to assert it, the employment at issue here not being covered by the Act.[2]

The provisions of the Farm Labor Contractor Registration Act of 1963 apply only to contractors who hire migrant workers for interstate agricultural employment. *See* 7 U.S.C. § 2042(d) (1970). The Act specifically defines "interstate agricultural employment" by reference to the provisions of the Fair Labor Standards Act, 29 U.S.C. § 203(f) (1970) and the Federal Insurance Contributions Act, 26 U.S.C. § 3121(g) (1970).[3] Prior cases interpreting these sec-

---

**2.** The only circuit which has considered the issue concluded that the Farm Labor Contractor Registration Act did not provide an implied remedy. *See Chavez v. Freshpict,* 10 Cir., 1972, 456 F.2d 890. The question of an implied right of action is unlikely to arise again since the Act was amended in 1974 to provide explicitly for a private remedy. *See* 7 U.S.C. § 2050a (Supp. IV 1974).

**3.** The relevant statutory provisions are quoted below.

> (d) The term "interstate agricultural employment" means employment in any service or activity included within the provisions of section 203(f) of Title 29, or section 3121(g) of Title 26, when such service or activity is performed by an individual worker who has been transported from one State to another or from any place outside of a State to any place within a State.

7 U.S.C. § 2042(d) (1970).

> (f) "Agriculture" includes farming in all its branches and among other things includes the cultivation and tillage of the soil, dairying, the production, cultivation, growing, and harvesting of any agricultural or horticultural commodities (including commodities defined as agricultural commodities in section 1141j(g) of Title 12), the raising of livestock, bees, fur-bearing animals, or poultry, and any practices (including any forestry or lumbering operations) performed by a farmer or on a farm as an incident to or in conjunction with such farming operations, including preparation for market, delivery to storage or to market or to carriers for transportation to market.

29 U.S.C. § 203(f) (1970).

> (g) *Agricultural labor.*—For purposes of this chapter, the term "agricultural labor" includes all service performed—
>
> (1) on a farm, in the employ of any person, in connection with cultivating the soil, or in connection with raising or harvesting any agricultural or horticultural commodity, including the raising, shearing, feeding, caring for, training, and management of livestock, bees, poultry, and fur-bearing animals and wildlife;
>
> (2) in the employ of the owner or tenant or other operator of a farm, in connection with the operation, management, conservation, improvement, or maintenance of such farm and its tools and equipment, or in salvaging timber or clearing land of brush and other debris left by a hurricane, if the major part of such service is performed on a farm;
>
> (3) in connection with the production or harvesting of any commodity defined as an agricultural commodity in section 15(g) of the Agricultural Marketing Act, as amended (46 Stat. 1550, § 3; 12 U.S.C. 1141j), or in connection with the ginning of cotton, or in connection with the operation or maintenance of ditches, canals, reservoirs, or waterways, not owned or operated for profit, used exclusively for supplying and storing water for farming purposes;
>
> (4)(A) in the employ of the operator of a farm in handling, planting, drying, packing, packaging, processing, freezing, grading, storing, or delivering to storage or to market or to a carrier for transportation to market, in its unmanufactured state, any agricultural or horticultural commodity; but only if such operator produced more than one-half of the commodity with respect to which such service is performed;

tions indicate that the work at the Packerland facility does not constitute agricultural employment.

The United States Supreme Court considered the provisions of 29 U.S.C. § 203(f) in *Farmers Reservoir & Irrigation Co. v. McComb,* 337 U.S. 755, 69 S.Ct. 1274, 93 L.Ed. 1672 (1949), where the issue presented was whether employees of a corporation that collected water and delivered it to the edge of the farmers' land were agricultural workers and therefore exempt from the Fair Labor Standards Act. To decide the question, the Court focused on "whether the activity in the particular case is carried on as part of the agricultural function or is separately organized as an independent productive activity." *Id.* at 761, 69 S.Ct. at 1278. In its analysis of section 203(f) the Court divided agricultural employment into two types.

> As can be readily seen this definition [in section 203(f)] has two distinct branches. First, there is the primary meaning. Agriculture includes farming in all its branches. Certain specific practices such as cultivation and tillage of the soil, dairying, etc., are listed as being included in this primary meaning. Second, there is the broader meaning. Agriculture is defined to include things other than farming as so illustrated. It includes any practices, whether or not themselves farming practices, which are performed either by a farmer or on a farm, incidently to or in conjunction with "such" farming operations.

*Id.* at 762–63, 69 S.Ct. at 1278. While noting that water was necessary for the production of crops, the Court found that under these standards the employees were not engaged in agricultural employment and that their activities were not within the primary meaning of agriculture because bringing water to the edge of the farmers' land was not itself cultivating the crops. The actual irrigation of the fields was done by workers of the individual farmer rather than by workers of the irrigation company. Further, the labor was not within the secondary meaning since while the collection of water for irrigation is connected with farming operations, in this case that function was performed neither by farmers nor on a farm.

Previous cases in this Circuit have applied these principles to cases involving employees of companies engaged in the processing and distribution of food products. For example, employees working at a facility primarily for receiving, weighing and holding livestock for resale were held not to be engaged in agriculture. *See Hodgson v. Wittenburg,* 5 Cir., 1972, 464 F.2d 1219. *See also Chapman v. Durkin,* 5 Cir., 1954, 214 F.2d 360, *cert. denied,* 348 U.S. 897, 75 S.Ct. 218, 99 L.Ed. 704 (1954).

The Federal Insurance Contributions Act also defines agricultural labor to exclude employees of distributors of agricultural products when the distributors are not farmers. *See* 26 U.S.C. § 3121(g)(4) (1970). We have previously interpreted this definition to exempt from the Federal Insurance

---

(B) in the employ of a group of operators of farms (other than a cooperative organization) in the performance of service described in subparagraph (A), but only if such operators produced all of the commodity with respect to which such service is performed. For purposes of this subparagraph, any unincorporated group of operators shall be deemed a cooperative organization if the number of operators comprising such group is more than 20 at any time during the calendar quarter in which such service is performed;

(C) the provisions of subparagraphs (A) and (B) shall not be deemed to be applicable with respect to service performed in connection with commercial canning or commercial freezing or in connection with any agricultural or horticultural commodity after its delivery to a terminal market for distribution for consumption; or

(5) on a farm operated for profit if such service is not in the course of the employer's trade or business or is domestic service in a private home of the employer.

As used in this subsection, the term "farm" includes stock, dairy, poultry, fruit, fur-bearing animal, and truck farms, plantations, ranches, nurseries, ranges, greenhouses or other similar structures used primarily for the raising of agricultural or horticultural commodities, and orchards.

26 U.S.C. § 3121(g) (1970).

Contributions Act employees of a cooperative which purchased fruit for packing and marketing because the packing and marketing of fruit was commercial in nature rather than incident to ordinary farming operations. *See Lake Region Packing Ass'n v. United States,* 5 Cir., 1944, 146 F.2d 157.

Applying these standards to the facts of this case, it is apparent that Packerland did not provide agricultural employment to plaintiffs. Packerland's activities are not covered by the primary definition of agricultural employment since Packerland is not involved in the raising of beef. Similarly, the broader meaning of agricultural employment given in *Farmers Reservoir & Irrigation Co. v. McComb, supra,* does not apply since the slaughter of beef is not being done by a farmer or on a farm. Instead the employment offered by Packerland is a commercial activity which has been separated from agricultural employment.

The 1974 amendments to the Farm Labor Contractor Registration Act[4] do not affect the result in this case. The events in this case occurred before the 1974 amendments, and accordingly are not affected by the new provisions of the Act. The argument that this amendment merely clarifies the definition of interstate agricultural employment as Congress originally intended it, is without merit. The prior provisions of 7 U.S.C. § 2042(d) (1970) clearly limited that term to the definitions contained in 29 U.S.C. § 203(f) and 26 U.S.C. § 3121(g) to which we have previously referred. Further, the legislative history indicates that Congress viewed the amendments as expanding the prior coverage of the Act.

The purpose of S. 3202 is to remedy the deficiencies of the Farm Labor Contractor Registration Act of 1963. The bill extends the Act's coverage and strengthens its enforcement mechanisms.

. . . The bill also adds coverage for employment involving the processing of agricultural commodities in an unmanufactured state.

1974 U.S.Code Cong. & Admin.News, pp. 6445–46.

Hence, we conclude that the employment offered by Packerland to plaintiffs was not agricultural employment and therefore that plaintiffs lack standing to bring an action under the Farm Labor Contractor Registration Act of 1963. Accordingly, the judgment below is correct and is

**AFFIRMED.**

---

**4.** The definition of agricultural employment has been expanded to read:

(d) The term "agricultural employment" means employment in any service or activity included within the provisions of section 203(f) of Title 29, or section 3121(g) of Title 26 and the handling, planting, drying, packing, packaging, processing, freezing, or grading prior to delivery for storage of any agricultural or horticultural commodity in its unmanufactured state.

7 U.S.C. § 2042(d) (Supp. IV 1974).