James D. **HODGSON,** Secretary of Labor, United States Department of Labor, Plaintiff-Appellant,

v.

Odus **WITTENBURG,** d/b/a Wittenburg Livestock Company, Defendant-Appellee.

No. 71–2654.

United States Court of Appeals, Fifth Circuit.

July 20, 1972.

Rehearing Denied Aug. 22, 1972.

---

Peter G. Nash, Sol. of Labor, Washington, D. C., M. J. Parmenter, Regional Sol., Betty Jo Christian, Atty., Dallas, Tex., Bessie Margolin, Associate Sol., Carin Ann Clauss, Donald S. Shire, Attys., Richard F. Schubert, Sol. of Labor, Ronald S. Cooper, Atty., U. S. Dept. of Labor, Washington, D. C., for plaintiff-appellant.

P. B. Shannon, Upton, Shannon, Porter & Johnson, San Angelo, Tex., for defendant-appellee.

Before WISDOM, GOLDBERG and CLARK, Circuit Judges.

WISDOM, Circuit Judge:

This appeal turns on the question whether employees who work in a facility used primarily for receiving, weighing, and holding livestock for resale are "employed in agriculture"; the employees perform some agricultural labor.

The Secretary of Labor brings this action under Section 17 of the Fair Labor Standards Act.[1] He seeks to enjoin Odus Wittenburg, the defendant-appellee, from violating the Act's minimum wage, overtime, record-keeping, and child-labor provisions, and to restrain Wittenburg from continuing to withhold unpaid wages due the employees at the San Angelo facility of the Wittenburg Livestock Company. The district court dismissed the complaint on the ground that the employees in question, although within the general coverage of the Fair Labor Standards Act were exempt from its provisions under Section 13(a) (6) (A) as employees "employed in agriculture * * * by an employer who did not, during any calendar quarter during the preceding calendar year, use more than five hundred man-days of agricultural labor." We reverse.

I.

Odus Wittenburg, a rancher and stockman, operates a place of business near San Angelo, Texas, under the trade name of Wittenburg Livestock Company, a sole proprietorship. The facility maintains holding pens, a barn, feed lots, and an office, all located on a 17-acre tract of land. In addition, Wittenburg leases farm and ranch lands in Texas, New Mexico, and California for raising livestock for his own account or in partnership with others.

According to Wittenburg's own testimony, 75 to 80 percent of the livestock moving through the San Angelo facility is raised by other ranchers and purchased by him for resale. He regularly purchases 1,790 to 7,000 head of livestock a month (principally sheep), and sells 2,200 to 5,000 head a month. Some of this livestock is sold within 24 hours. He also sells livestock raised in his own ranching operations; this livestock accounts for 20 to 25 percent of the total number moving through the San Angelo facility. Sometimes he uses the facility to house his own livestock in emergency situations, as for example, when the animals are in need of doctoring or when their pasture becomes unavailable because of dry spells.[2]

---

1. Act of June 25, 1938, c. 676, 52 Stat. 1060, as amended; 29 U.S.C. § 201 et seq.

2. The Secretary has limited his appeal to the trial court's ruling on the exemption question, since it is this question which determines defendant's future obligations under the Act. A reversal of the trial court's ruling on this issue will not only require the defendant to maintain records, which—as this Court has pointed out —"are [the] fundamental underpinnings

## II.

The basic question this appeal raises is whether the employees' work constitutes agriculture within the meaning of the Act. The answer to that lies partly in the rule that an employee's performance of both exempt and non-exempt activities during the same work week defeats any exemption that would otherwise apply.

Section 13(a)(6), as enacted in the original Fair Labor Standards Act of 1938, provided an exemption from the Act's minimum wage and overtime requirements for "any employee employed in agriculture". Interpretative Bulletin 14, issued as long ago as August 21, 1939 (1940 Wage-Hour Manual 182), by definition limited that exemption:

> An employee is exempt by virtue of Section 13(a)(6) if, but only if, his work falls within the specific language of Section 3(f). If during any workweek an employee performs work some of which is exempt under Section 3(f) and some of which is not exempt, the exemption does not apply to him during that workweek. It is our opinion, in other words, that there can be no segregation within the workweek between exempt and non-exempt operations.

This principle has been restated without substantial change in later Interpretative Bulletins. *See* 29 C.F.R. § 780.5(b) (1956) and 29 C.F.R. § 780.110 (1961).

In Mitchell v. Hunt, 5 Cir. 1959, 263 F.2d 913, the employees worked in admittedly exempt farming and cattle raising operations during every day of the week except Saturday. On Saturday, the employees worked at the farmer's auction barn, where he conducted an auction sale of livestock, two-thirds of which belonged to other farmers. Although the employees were engaged in agriculture during all but one day of the week, this Court, in accordance with the Secretary's longstanding position, ruled that the employees were not exempt, since the work they performed at the Saturday auction did not constitute "agriculture" within the meaning of Section 3(f).

In 1961, Congress carved out "a specific and limited exemption" (Hodgson v. Ewing, 5 Cir. 1971, 451 F.2d 526, 529) for employees who are also engaged in livestock auctions. Congress, however, was well aware of the position taken by the Administrator and approved by the courts. See Hearings [on S. 1470] before the Senate Subcommittee on Labor, 86th Congress, 1st Session, at p. 968.

S. 1470 was not reported out of committee. In the next Congress, however, Senator Hill proposed an amendment to the House-passed bill, H.R. 3935. That amendment (107 Cong.Rec. 6251), which was identical to S. 1470, was agreed to by the Senate (107 Cong.Rec. 6251), accepted by the conference committee (House Conf.Rept. 327, 87th Cong., 1st Sess., at p. 17; 2 U.S.Cong. & Admin. News (1961) at p. 1710) and became Section 13(a)(16) [now Section 13(b)(13)] of the Act.

Since Wittenburg's employees performed non-agricultural work unrelated to operating a livestock auction, the agricultural exemption is inapplicable.

## III.

"Agriculture" is defined in Section 3(f) of the Act as follows:

> "Agriculture" includes farming in all its branches and among other things includes the cultivation and tillage of the soil, dairying, the production, cultivation, growing, and harvesting of any agricultural or horticultural commodities (including commodities defined as agricultural commodities in Section 15(g) of the Agricultural Marketing Act, as amended), the raising of livestock, bees, fur-bearing ani-

---

of the Act" (Wirtz v. Mississippi Publishers Corporation, 5 Cir. 1966, 364 F.2d 603, 607), but also to restore the unpaid overtime compensation due to James Leek

and Charles Sheppard for the hours which the court found they worked in excess of 40 a week.

mals, or poultry, and any practices (including any forestry or lumbering operations) performed by a farmer or on a farm as an incident to or in conjunction with such farming operations, including preparation for market, delivery to storage or to market or to carriers for transportation to market.

Commenting on this definition, the Supreme Court has said:

"As can be readily seen this definition has two distinct branches. First, there is the primary meaning. Agriculture includes farming in all its branches. Certain specific practices such as cultivation and tillage of the soil, dairying, etc., are listed as being included in this primary meaning. Second, there is the broader meaning. Agriculture is defined to include things other than farming as so illustrated. It includes any practices, whether or not themselves farming practices, which are performed either by a farmer or on a farm, incidentally to or in conjunction with 'such' farming operations."

Farmers Reservoir & Irrigation Co. v. McComb, 1949, 337 U.S. 755, 762, 69 S. Ct. 1274, 1278, 93 L.Ed. 1672, reh. den. 338 U.S. 839, 70 S.Ct. 31, 94 L.Ed. 513.

In Mitchell v. Hunt this Court pointed out, "The only activity as to livestock listed within the 'primary meaning' of agriculture is 'the raising of livestock'." 263 F.2d at 916. In that case two-thirds of the livestock sold belonged to others than the employer; the handling and feeding of livestock was performed in conjunction with the livestock auction and was not incidental to farming operations. The secondary meaning covers activities "incident to or in conjunction with . . . farming operations". Farmers Reservoir Irrigation, 337 U.S. at 763, 69 S.Ct. at 1278. Here the handling and feeding activities were incident to or in conjunction not with Wittenburg's own livestock raising activities but with his buying and selling of livestock. National Labor Relations Board v. Tovrea Packing Co., 9 Cir. 1940, 111 F.2d 626, cert. den. 311 U.S. 668, 61 S. Ct. 28, 85 L.Ed. 429, is directly in point. There the court held that employees employed in a packing plant's feeding pens were not "agricultural laborers" within the meaning of the National Labor Relations Act. There, as here, the employer also owned and operated several ranches where it raised, in addition to cattle, such agricultural crops as hay and alfalfa. As the court there explained, the feeding in question was not performed "as an incident to a stock ranch", but was performed on "stock ready for conditioning and fattening [and] confined in relatively small corrals and fed intensively for short spaces of time as an incident to" the defendant's packing operations. In holding the exemption inapplicable, the court stated:

Although Huntsville is a farmer to the extent that it operates Gladstone Farm and has nursery stock growing on the Fraser Place, this is not sufficient to exempt the employees at the Canal Street warehouse, employed in unloading, sorting, grading, trimming, storing, racking, and picking nursery stock received from other sources. This is so for the reason pointed out in the Farmers Irrigation case, that the Act's definition of agriculture requires that the practices be performed by a farmer or on a farm, and there is the additional requirement that the practices be incidental to such farming.

A similar problem has arisen in the sugar cane industry. The cases hold that the agricultural exemption is inapplicable to sugar mill employees engaged in processing sugar cane grown by their employers as well as cane grown by others. Bowie v. Gonzalez, 1 Cir. 1941, 117 F.2d 11; Calaf v. Gonzalez, 2 Cir. 1942, 127 F.2d 934; N.L.R.B. v. Olaa Sugar Company, 9 Cir. 1957, 242 F.2d 714. See also N.L.R.B. v. Tepper, 10 Cir. 1961, 297 F.2d 280.

The record shows that Wittenburg's employees at his San Angelo facility were primarily engaged in the handling, care, and feeding of livestock purchased

by him for immediate resale. These activities do not constitute agriculture within the meaning of the Fair Labor Standards Act.

In view of our holding, it is unnecessary to decide whether the record shows that the defendant did not, as he contended, "during any calendar quarter during the preceding calendar year, use more than five hundred man-days of agricultural labor". 29 U.S.C. § 13(a)(6)(A).

The judgment is reversed and remanded with further proceedings consistent with this opinion.