Milton **ROEBUCK**, Rodell Roberts, Anthony Bryant and George Boothe, Plaintiffs,

v.

**HUDSON VALLEY FARMS, INC.**; Jeffrey Paladino; William Paladino; Walter Morgan; and Pepperidge Farm, Inc., Defendants

No. 00–CV–1927.

United States District Court, N.D. New York.

Dec. 18, 2002.

---

Farmworker Legal Services of New York, Inc., Daniel Werner, Esq., of counsel, New Paltz, NY, for Plaintiffs.

Shapiro, Beilly, Rosenberg, Aronowitz, Levy & Fox, LLP, Barry I. Levy, Esq., of counsel, New York City, for Defendants

Hudson Valley Farms, Inc., Jeffrey Paladino, William Paladino, and Walter Morgan.

Proskauer, Rose Law Firm, Bettina Plevin, Esq., of counsel, New York City, for Defendant Pepperidge Farm, Inc.

## MEMORANDUM–DECISION AND ORDER

MORDUE, District Judge.

### INTRODUCTION

In the initial complaint, filed on December 15, 2000, Milton Roebuck, a migrant farm worker employed at a packing shed owned and/or operated by one or more defendants, claims that, during weeks when he and other similarly situated workers processed fruit grown on other farms, defendants failed to pay them at a rate of time and a half for work in excess of 40 hours per week as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., and Article 19, N.Y. Labor Law.[1]

As a result of amendments to the complaint, Rodell Roberts, Anthony Bryant and George Boothe have been added as plaintiffs, and Pepperidge Farm, Inc., and William J. Paladino have been added as defendants. Plaintiffs bring a representative action under 29 U.S.C. § 216(b) alleging FLSA violations (first cause of action) and a class action under Fed.R.Civ.P. 23(b) alleging N.Y. Labor Law violations (second cause of action). The second amended complaint seeks certification as a FLSA representative action and as a Rule 23 class action; a declaration that defendants violated FLSA and N.Y. Labor Law; an injunction prohibiting defendants from committing future violations; money damages for lost wages; liquidated damages; and attorneys' fees and costs.

By Notice of Motion dated April 27, 2001, Milton Roebuck, then the sole plaintiff, moved for leave to proceed as a representative action under FLSA, for court-authorized notice of the action to potential opt-in plaintiffs, and for the disclosure of names and addresses of the potential opt-in plaintiffs. Due to the amendments to the complaint, the briefing schedule was revised. All parties have now briefed the motion, and plaintiffs have submitted an amended proposed notice.[2]

For reasons set forth below, the Court grants plaintiffs' motion for court-authorized notice to potential opt-in plaintiffs under 29 U.S.C. § 216(b). The Court defines the class of potential opt-in plaintiffs as all packing shed workers employed during the three-year period preceding October 29, 2001, and directs defendants to produce the names and last known addresses of all packing shed workers employed during that time period. The Court also sets certain requirements pertaining to notice and the opt-in period.

### DISCUSSION

Under section 207(a)(1)of FLSA, employees who work more than 40 hours per week are ordinarily entitled to be paid at time-and-a-half.[3] Workers employed in

---

1. The Court has jurisdiction under 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1337 (action arising under Acts of Congress regulating commerce). The Court also has jurisdiction over plaintiffs' claims for declaratory relief, 28 U.S.C. §§ 2201, 2202, and supplemental jurisdiction over plaintiffs' state law claims. 28 U.S.C. § 1367.

2. Plaintiffs' proposed amended notice is attached as Exhibit 1 to "Plaintiffs' Reply to Defendant Pepperidge Farm's Memorandum of Law in Opposition to Plaintiffs' Motion to Proceed as a Representative Action, for Court–Authorized Notice, and for the Disclosure of the Names and Addresses of the Potential Opt-in Plaintiffs" (Dkt.# 68).

3. 29 U.S.C. § 207(a)(1) provides:

agriculture are exempt from this general rule. *See* 29 U.S.C. § 213(b)(12).[4] It is well established that "agriculture" under FLSA "includes farming in both a primary and a secondary sense."[5] *Bayside Enters., Inc. v. N.L.R.B.,* 429 U.S. 298, 300, 97 S.Ct. 576, 50 L.Ed.2d 494 (1977). The term includes "any practices, whether or not themselves farming practices, which are performed either by a farmer or on a farm, incidentally to or in conjunction with such farming operations[,]" *Farmers Reservoir & Irrigation Co. v. McComb,* 337 U.S. 755, 763, 69 S.Ct. 1274, 93 L.Ed. 1672 (1949), that is, any "functions [which] are uniquely integrated into the over-all agricultural enterprise." *Wirtz v. Jackson & Perkins Co.,* 312 F.2d 48, 50 (2d Cir.1963). It has been held that where the employer processes produce grown by independent farmers, the employer cannot benefit from the exemption. *See Marshall v. Gulf &*

*Western Inds., Inc.,* 552 F.2d 124, 126 (5th Cir.1977); *Hodgson v. Wittenburg,* 464 F.2d 1219, 1222 (5th Cir.1972). Also, where a function such as processing or packing produce is separately organized as an independent productive activity, the exemption does not apply. *See Farmers Reservoir,* 337 U.S. at 761, 69 S.Ct. 1274; *Marshall,* 552 F.2d at 126; *Hodgson v. Idaho Trout Processors Co.,* 497 F.2d 58, 60 (9th Cir.1974).

Section 216(b) of FLSA authorizes a representative action by employees to recover unpaid overtime compensation and liquidated damages from employers who violate the FLSA's overtime provisions.[6] In order to participate in a representative action[7] under section 216(b), an employee must consent ("opt in") to the action in writing.[8] District courts have the discretionary power to authorize the sending of

---

[N]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

**4.** 29 U.S.C. § 213(b)(12) exempts from the provisions of section 207 "any employee employed in agriculture[.]"

**5.** 29 U.S.C. § 203(f) defines agriculture as follows:

"Agriculture" includes farming in all its branches and among other things includes the cultivation and tillage of the soil, dairying, the production, cultivation, growing, and harvesting of any agricultural or horticultural commodities ... performed by a farmer or on a farm as an incident to or in conjunction with such farming operations, including preparation for market, delivery to storage or to market or to carriers for transportation to market.

**6.** Section 216(b) provides in part:

Any employer who violates the provisions of ... [section 207] shall be liable to the employee or employees affected in the amount of ... their unpaid overtime compensation, ... and in an additional equal amount as liquidated damages.... An action to recover [such] liability ... may be maintained against any employer ... by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

**7.** A representative action (also called a "collective action" or a "class action") under section 216(b) of FLSA differs significantly from a class action under Fed.R.Civ.P. 23. For ease of reference in this Memorandum–Decision and Order, the Court uses the term "class action" to refer to a representative action under section 216(b).

**8.** See footnote 6, supra.

notice to potential class members to inform them of the action and to give them the opportunity to participate by opting in. *See Hoffmann–La Roche Inc. v. Sperling,* 493 U.S. 165, 169–70, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989). The Second Circuit has stated that a district court's power to authorize notice to potential opt-in plaintiffs in an appropriate FLSA case "comports with the broad remedial purpose of the Act, which should be given a liberal construction, as well as with the interest of the courts in avoiding multiplicity of suits." *Braunstein v. Eastern Photographic Labs., Inc.,* 600 F.2d 335, 336 (2d Cir.1978).

 In addressing a request for court-authorized notice of a class action under FLSA, a court must consider whether plaintiffs have demonstrated the existence of a definable class of potential plaintiffs who are "similarly situated." 29 U.S.C. § 216(b). To meet this burden, plaintiffs need only "mak[e] a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Realite v. Ark Restaurants Corp.,* 7 F.Supp.2d 303, 306 (S.D.N.Y.1998); *accord Hoffmann v. Sbarro, Inc.,* 982 F.Supp. 249, 261 (S.D.N.Y. 1997); *Schwed v. General Elec. Co.,* 159 F.R.D. 373, 375–76 (N.D.N.Y.1995) ("plaintiffs need only describe the potential class within reasonable limits and provide some factual basis from which the court can determine if similarly situated potential plaintiffs exist."). A court should not evaluate the merits of plaintiffs' claim in determining whether class notice is warranted. *See Hoffmann,* 982 F.Supp. at 262.

 In support of their application to this Court, plaintiffs submit the declarations of plaintiffs Milton Roebuck, George Boothe and Rodell Roberts, in support of their contention that they and other employees of defendants were subjected to pay practices which were unlawful under FLSA, specifically failure to pay packing shed employees overtime wages as required by section 207(a)(1) in weeks during which they worked more than 40 hours and were not engaged in exempt agricultural work under section 213(b)(12). It is plaintiffs' position that they were not engaged in exempt work when they packed and/or processed fruit obtained from growers other than defendants, or when they were employed in the "slicing and dicing" of fruit.

The affidavit of Milton Roebuck states in part:

2. I was employed at the packing and processing shed of the Defendants in this case from approximately September 1, 1991 until approximately May 1, 2000.

3. At the shed, I worked on the line and operated a forklift.

4. While employed with the Defendants, I observed that fruit coming from other farms was packed and/or processed by myself and others in the shed.

5. While I was working at the shed, other workers and I spent part of our time working on the line where fruit was sliced or diced, and then packaged.

6. I frequently worked over forty hours per week during workweeks when I did the work described in ¶¶ 4 and 5, *supra.*

7. I was not paid overtime at the rate of time-and-one half for every hour I worked over forty hours in a workweek when I did the work described in ¶¶ 4 and 5, *supra.*

8. I understand that the United States Department of Labor made Hudson Valley Farms, Inc. pay me some of the overtime I was owed between September 26, 1998 and October 23, 1999. However, I believe I am still owed additional overtime for workweeks when I

was employed at the Defendants' operations.

9. I observed that other employees at the packing shed did work that was the same or similar to the work I did. I also observed that these employees also frequently worked over 40 hours per week and that they were not paid overtime wages at the rate of time-and-one-half.

The affidavits of George Boothe and Rodell Roberts are similar.

In opposition, defendants submit an affidavit from defendant William Paladino, stating that Roebuck operated the fork lift and could not have observed other employees working over 40 hours per week, that he could not have known the other employees' rate of pay, and that he is unlikely to have obtained this information in conversations with other employees because most of the employees did not speak English with any fluency.

The Court finds that the affidavits of Roebuck, Boothe and Roberts are sufficient to constitute a preliminary showing that plaintiffs and potential plaintiffs together were victims of a common policy or plan that violated the law, specifically, that defendants did not pay packing shed employees time and a half for overtime when the employees performed work which fell outside the agricultural exemption from the overtime pay requirement of FLSA. The action is only in the discovery and notice stage; the Court may later take remedial action if subsequent proceedings establish that plaintiffs and/or opt-in plaintiffs are in fact not similarly situated and that the class should be narrowed in some fashion. *See, e.g., Realite,* 7 F.Supp.2d at 308.

█ Plaintiffs request that the Court direct notice to all packing shed workers employed during the three-year period preceding October 29, 2001. Defendants raise a number of objections. First, they urge that the class of former employees entitled to notice should be limited to those packing shed workers who worked overtime during the time period in question. However, any attempt at this stage of the action to determine which employees worked overtime would be based solely on defendants' records. Plaintiffs should be authorized to send notices to all those who worked in the packing shed during the time in question; thus, any worker who believes he worked overtime will have the opportunity to be heard.

Defendants also argue that those employees who were engaged in "slicing and dicing" were exempt from FLSA overtime requirements as a matter of law, on the ground that these activities were performed "incidentally to or in conjunction with [defendants'] farming operations." *Farmers Reservoir,* 337 U.S. at 762–763, 69 S.Ct. 1274. At this stage of the action and in the absence of a reasonable opportunity for plaintiffs to conduct discovery, the Court cannot definitively rule on whether the slicing and dicing process was incidental to the farming operation or whether it was separately organized as an independent productive activity, *see id.* at 761, 69 S.Ct. 1274, or, as plaintiffs contend, "more akin to manufacturing." Likewise, the Court cannot determine whether, when and the extent to which the produce which was processed was grown by independent farmers. *See generally Hodgson v. Wittenburg,* 464 F.2d at 1222. The Court agrees with defendants' proposal, however, that the notice contain a statement of defendants' position on the issue. The Court does not believe that such a statement would be unduly confusing to potential opt-in plaintiffs. Specifically, at the close of the second paragraph of the section of the notice headed "Description of the Lawsuit," a sentence should be added stating,

as requested by Pepperidge Farm: "It is defendants' position that the packing shed workers were agricultural employees engaged in secondary agriculture and therefore were exempt from the overtime provisions of the Fair Labor Standards Act."

Defendants further argue that in defining the class of potential opt-in plaintiffs the two-year limitation period applicable to non-willful violations should be utilized, not the three-year limitation period applicable to willful violations. *See* 29 U.S.C. § 255.[9] The Court agrees with plaintiffs that the issue of willfulness cannot be determined at this stage and that therefore the Court should direct that the notice be distributed to all packing shed workers employed during the three-year period preceding October 29, 2001.[10]

In addition, defendants argue that, if notice is distributed to all packing shed workers employed during the three-year period preceding October 29, 2001, it will improperly include employees who released their FLSA claims in October 1999 as a result of a settlement with the U.S. Department of Labor. Plaintiffs argue that some waivers may be invalid. Moreover, it is not clear whether the waivers cover the entire time period preceding October 1999 with respect to all potential plaintiffs.[11] At this stage of the action the Court cannot determine whether and how the waivers affect the rights of each plaintiff and potential plaintiff. The Court

agrees with defendants' proposal, however, that the issue be set forth in the notice. Thus, a sentence should be added to the second paragraph of "Description of the Lawsuit" to state: "It is also defendants' position that employees who were provided with a U.S. Department of Labor form WH–58 in October 1999 and received additional compensation, have waived any right to recover additional wages for certain periods of time."

■ Plaintiffs agree that all translations of the court-authorized notice and consent to sue will be verified by a federal court-certified translator. With respect to defendants' contention that the signatures on the consents to sue should be authenticated, plaintiffs argue that all that is required is that the consent reflect that the opt-in plaintiff had a basic understanding of the nature of the consent. *See Riojas v. Seal Produce, Inc.,* 82 F.R.D. 613, 617 (S.D.Tex. 1979). It is reasonable to assume that a number of potential plaintiffs are presently migrant workers who may live in rural areas and lack resources and access to transportation. A requirement that their consents be authenticated could well present a heavy burden, if not an insuperable obstacle, to their participation in the action. A declaration made under penalty of perjury, 28 U.S.C. § 1746, is sufficient.

■ With respect to the length of the opt-in period, plaintiffs state that they anticipate significant difficulties in locating

9. 29 U.S.C. § 255(a) provides in part that any action to enforce a claim for unpaid overtime compensation or liquidated damages "may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued[.]"

10. On that date the Court approved the parties' agreement to toll the FLSA statute of limitations period for potential opt-in plaintiffs.

11. For example, assuming a three-year limitations period ending on October 29, 2001, and based on George Booth's waiver and footnote 1 on page 8 of the declaration of William C. Paladino dated October 12, 2001, it appears that Booth may have unsettled claims for overtime work performed between October 29, 1998, and May 1999.

potential opt-in plaintiffs, noting that they "migrate not only within North America, ... but from as far away as Bangladesh." Under all of the circumstances, plaintiffs' request of nine months is not unreasonable. Nor have defendants made any showing that an opt-in period of this length will prejudice them in any way. Accordingly, the Court grants plaintiffs' request of a nine-month opt-in period.

In view of the Court's decision herein, discovery of the names and last known addresses of potential plaintiffs is appropriate at this time. Accordingly, defendants are directed to produce to plaintiffs' counsel the names and last known addresses of all packing shed workers employed during the three-year period preceding October 29, 2001. Defendants shall do so no later than 35 days from the date of this Memorandum–Decision and Order. The opt-in period will commence to run on the date that defendants provide the names and addresses of the potential class members to plaintiffs.

**CONCLUSION**

Accordingly, it is

ORDERED that the motion by plaintiffs for court-authorized notice to potential opt-in plaintiffs in this representative action under 29 U.S.C. § 216(b) is granted; and it is further

ORDERED that the class of potential opt-in plaintiffs entitled to notice is defined as all packing shed workers employed during the three-year period preceding October 29, 2001; and it is further

ORDERED that the proposed amended "Notice and Consent to Sue for Violations of the Fair Labor Standards Act" attached as Exhibit 1 to "Plaintiffs' Reply to Defendant Pepperidge Farm's Memorandum of Law in Opposition to Plaintiffs' Motion to Proceed as a Representative Action, for Court–Authorized Notice, and for the Disclosure of the Names and Addresses of the

Potential Opt-in Plaintiffs" (Dkt.# 68), is approved, except that plaintiffs are directed to add the material set forth in the following ordering paragraph; and it is further

ORDERED that plaintiffs add the following material at the close of the second paragraph of the section of the notice headed "Description of the Lawsuit": "It is defendants' position that the packing shed workers were agricultural employees engaged in secondary agriculture and therefore were exempt from the overtime provisions of the Fair Labor Standards Act. It is also defendants' position that employees who were provided with a U.S. Department of Labor form WH–58 in October 1999 and received additional compensation, have waived any right to recover additional wages for certain periods of time"; and it is further

ORDERED that no later than 35 days after the date of this Memorandum–Decision and Order defendants shall produce to plaintiffs' counsel the names and last known addresses of all packing shed workers employed during the three-year period preceding October 29, 2001; and it is further

ORDERED that the time period within which potential opt-in plaintiffs may opt in is nine months; and it is further

ORDERED that the nine-month opt-in period will commence to run on the date that defendants provide the names and last known addresses of the potential class members to plaintiffs; and it is further

ORDERED that all translations of the notice and consent from English into another language must be verified by a federal court-certified translator.

IT IS SO ORDERED.