Ederclei Lorussa LIMA, Sebastiao Texeira, Altair Rableo, Isaias Gonzales Santos, Sdonge Mendez, Leonardo Ceieira De Souza, Jose Tomas De Aquino Filho

v.

INTERNATIONAL CATASTROPHE SOLUTIONS, INC., a Georgia Corporation, PJ Services Catastrophe Solutions, Inc., a Georgia Corporation, Corey Pitts, an Individual, C.L.S. Construction & Labor Services, Inc., a Florida Corporation, and Flavio Burgos, an Individual.

No. CIV.A. 06–6607.

United States District Court,
E.D. Louisiana.

June 27, 2007.

William Lurye, Robein, Urann & Lurye, Metairie, LA, Gregory J. McCoy, Ronald J. Vander Veen, Cunningham Dalman, P.C., Holland, MI, Jose A. Sandoval, Robert Anthony Alvarez, Law Office of Jose A. Sandoval, P.C., Wyoming, MI, for Ederclei Lorussa Lima, Sebastiao Texeira, Altair Rableo, Isaias Gonzales Santos, Sdonge Mendez, Leonardo Ceieira De Souza, Jose Tomas De Aquino Filho.

Craig L. Kaster, Craig L. Kaster & Associates, LLC, Zachary, LA, Ainsworth G. Dudley, Attorney at Law, Atlanta, GA, for International Catastrophe Solutions, Inc., a Georgia Corporation, PJ Services Catastrophe Solutions, Inc., a Georgia Corporation, Corey Pitts, an Individual, C.L.S. Construction & Labor Services, Inc., a Florida Corporation, and Flavio Burgos, an Individual.

CLS Construction & Labor Services, Inc., Orlando, FL, pro se.

Flavio Burgos, Orlando, FL, pro se.

## ORDER AND REASONS

FALLON, District Judge.

Before the Court is the Plaintiffs' Motion to Proceed as a Collective Action, for Tolling of the Statute of Limitations, for Court Authorized Notice, and for Disclosure of the Names and Addresses of the Potential Opt-in Plaintiffs (Rec.Doc. 60). For the following reasons, the motion is GRANTED in part and DENIED in part.

### I. Background

The Plaintiffs bring this complaint on behalf of themselves and all others "similarly situated" against Defendants International Catastrophe Solutions, Inc. ("ICS"); PJ Services Catastrophe Solutions, Inc. ("PJ Services"); the president of ICS and PJ Services, Corey Pitts ("Pitts"); ICS subcontractor C.L.S. Construction & Labor Services, Inc. ("C.L.S."); and C.L.S.'s president Flavio Burgos ("Burgos") for alleged violations of the overtime wage provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"). In their complaint, filed September 27, 2006, the Plaintiffs, predominantly immigrants, state that they were recruited by the Defendants to work as manual laborers in the clean-up and restoration of various businesses along the Gulf Coast following Hurricane Katrina. Specifically, the Plaintiffs state that Defendants PJ Services and ICS contracted with businesses to provide remediation and cleaning services. The Plaintiffs allege that they were recruited and hired by subcontractors utilized by PJ Services and ICS to perform the contract work. However, the Plaintiffs state that they remained joint employees at all relevant times of ICS and/or PJ Services and the subcontractor.

The Plaintiffs allege that they and others "similarly situated" were not paid proper overtime wage for their work in excess of forty hours per week. The

Plaintiffs now seek to maintain their case as a collective action as they believe the Defendants' practice was uniform throughout their operation due to a centralized payroll and management system and similar experiences shared by other laborers with whom the Plaintiffs worked. They also seek approval of notice, disclosure of information by the Defendants, tolling of the statute of limitations, and extension of the opt-in period.

The Defendants deny liability for violations of FLSA's overtime provisions. Additionally, in an opposition memorandum to the pending motion, Defendants ICS, PJ Services and Pitts (together, the "ICS Defendants") object to the Plaintiffs' proposed class definition as too broad. They also make objections to the notice form, dispute the method of notice distribution, and oppose a tolling of the statute of limitations and an extended opt-in period.

## II. Certification of Collective Action

■■■ The FLSA affords workers the right to sue collectively on behalf of themselves and others "similarly situated" for violations of the Act's minimum wage provisions and overtime protections. 29 U.S.C. § 216(b). "Unlike class actions governed by Rule 23 of the Federal Rules of Civil Procedure, in which potential class members may choose to opt out of the action, FLSA collective actions require potential class members to notify the court of their desire to opt-in to the action." Anderson v. Cagle's Inc., 488 F.3d 945, 950 n. 3 (11th Cir.2007) (citing 29 U.S.C. § 216(b)); Badgett v. Texas Taco Cabana, L.P., 2006 WL 2934265, at *1 (S.D.Tex.

Oct.12, 2006). District courts are provided with discretionary power to implement the collective action procedure through the sending of notice to potential plaintiffs. Lentz v. Spanky's Restaurant II, Inc., 491 F.Supp.2d 663, 667–68, 2007 WL 1628853, at *2 (5th Cir.2007) (citing Hoffmann–La Roche, Inc. v. Sperling, 493 U.S. 165, 169, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989)). Notice must be "timely, accurate and informative." Hoffmann–La Roche, 493 U.S. at 172, 110 S.Ct. 482.

■■■ When making the "similarly situated" inquiry and determining whether notice should be given, district courts commonly follow the "two stage" Lusardi approach, described in detail in Mooney v. Aramco Services, Co., 54 F.3d 1207, 1213–14 (5th Cir.1995), overruled on other grounds by Desert Palace, Inc. v. Costa, 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003).[1] Badgett, 2006 WL 2934265, at *1; see also Basco v. Wal–Mart Stores, 2004 WL 1497709, at *4 (E.D.La. July 2, 2004); Kaluom v. Stolt Offshore, Inc., 474 F.Supp.2d 866, 871 (S.D.Tex.2007) (citing "two stage" approach as favored procedure).

The first determination is made at the so-called "notice stage." At the notice stage, the district court makes a decision-usually based only on the pleading and any affidavits which have been submitted whether notice of the action should be given to potential class members.

Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically

---

1. Mooney also discussed a second methodology, the "Shushan" or "spurious class action" approach, in which the court conducts the inquiry outlined in Federal Rule of Civil Procedure 23. See Mooney, 54 F.3d at 1214 (citing Shushan v. Univ. of Colo., 132 F.R.D. 263 (D.Colo.1990)). Mooney did not state which of the two procedures is the proper

approach, though, as stated above, the "two stage" approach is more commonly used by district courts. The Shushan approach has been described as "more stringent" than the "two stage" approach. Lentz, 491 F.Supp.2d 663, 670–71, 2007 WL 1628853, at *5 (N.D.Tex.2007).

*results in "conditional certification" of a representative class.* If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in."

The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt in plaintiffs are dismissed without prejudice. The class representatives-i.e. the original plaintiffs-proceed to trial on their individual claims....

*Mooney,* 54 F.3d at 1213–14 (emphasis added) (internal citations and quotations omitted).

As this case is presently at the "notice stage," the Court must make a decision whether conditional certification should be granted and whether notice of the action and right to opt-in should be given to potential class members.

▮ At the notice stage, the plaintiff bears the burden of making a preliminary factual showing that at least a few similarly situated individuals exist. *Badgett,* 2006 WL 2934265, at *2; *Lentz,* 2007 WL 1628853, at *3 (citing *Simmons v. T–Mobile USA, Inc.,* 2007 WL 210008, at *9 (S.D.Tex. Jan.24, 2007)). The plaintiff may satisfy his or her burden through submission of evidence in the form of pleadings, affidavits and other supporting documentation. *See Badgett,* 2006 WL 2934265, at *2 (quoting *H & R Block, Ltd. v. Housden,* 186 F.R.D. 399, 400 (E.D.Tex. 1999) ("Courts who have faced the ques-

tion whether movants established substantial allegations have considered factors such as whether potential plaintiffs were identified...whether affidavits of potential plaintiffs were submitted...and whether evidence of a widespread discriminatory plan was submitted....")). While the standard at this stage is "not particularly stringent," *Hipp v. Liberty National Life Ins. Co.,* 252 F.3d 1208, 1213 (11th Cir. 2001), it is by no means automatic. *Badgett,* 2006 WL 2934265, at *2 (stating that of 115 FLSA actions filed in district in 2005 purporting to be collective actions, only 17 were certified as such).

> Whether employees are 'similarly situated' for purposes of the FLSA is determined in reference to their 'job requirements and with regard to their pay provisions.' *Dybach v. Florida Dep't of Corr.,* 942 F.2d 1562, 1567–68 (11th Cir. 1991). A plaintiff need only demonstrate a reasonable basis for the allegation that a class of similarly situated persons may exist. *Grayson v. K Mart Corp.,* 79 F.3d 1086, 1097 (11th Cir. 1996). However, at least some evidence beyond unsupported factual assertions of a single decision, policy, or plan should be presented. *Housden,* 186 F.R.D. at 400.

*Badgett,* 2006 WL 2934265, at *2.

▮ In this case, the Plaintiffs rely on the allegations contained in their First Amended Complaint (Rec.Doc. 3), as well as the affidavits of all named Plaintiffs and three other individuals who have opted-in to the case, to establish that there is a group of similarly situated individuals entitled to receive notice. (Rec.Doc. 60–5, Ex. 3). In their affidavits, which are identical in language, the Plaintiffs and opt-ins state that they all worked for the Defendants in September of 2005 and were not paid proper overtime wages due to a company-wide policy of mis-classifying them as inde-

pendent. contractors. The affidavits further state that the named Plaintiffs and opt-ins were housed in a hotel along with 350 to 400 other workers and that they were subject to identical pay practices, receiving straight pay of ten dollars per hour for all hours worked in excess of forty hours per week. The FLSA, however, requires that workers, regardless of mode of payment, receive at least one and half times their regular salary per hour for every hour worked in excess of forty hours per week. 29 U.S.C. § 207(a). The Plaintiffs and opts-ins further state that they, along with others, were paid two checks every two weeks but were not provided with check stubs. These checks were from a personal checking account and not a business checking account of C.L.S. Moreover, the Plaintiffs and opt-ins state that they were not exempt from the FLSA's overtime wage provisions.[2]

The ICS Defendants object to the scope of the class which the Plaintiffs ask the Court to certify. Specifically, these Defendants oppose the inclusion of potential opt-ins who were employees of "Flavio Burgos or other subcontractors." The ICS Defendants contend that while workers hired by C.L.S. may be similarly or identically situated, the Plaintiffs present no evidence that workers hired by other subcontractors are similarly situated and were subjected to similar illegal pay schemes. The ICS Defendants claim that the affidavits submitted by the Plaintiffs are only those of persons who were recruited by C.L.S. and only performed services under the subcontract between ICS and C.L.S.

In their reply brief, the Plaintiffs argue that it is reasonable to assume that ICS enters into similar contracts with other subcontractors and would similarly negotiate that workers be paid a straight time

rate. If true, the Defendants should have records of all hours, including overtime, worked by potential class members, regardless of the subcontractor. The Plaintiffs state that the main issue in litigation against the ICS Defendants will focus on whether the ICS Defendants are joint employers of the workers with the subcontractors and therefore must comply with FLSA overtime requirements. The Plaintiffs claim that "[t]he named Plaintiffs and the potential class are therefore similarly situated as it relates to the legal issues of joint employment and to the pattern or policy of the Defendants to not pay overtime wages based on their belief that they are not joint employers." (Rec.Doc. No. 67).

■■■ "In deciding whether the Plaintiff has met the requirements of . . . the 'two-step approach,' this court is mindful that it, like practicing attorneys, has a responsibility to refrain from stirring up unwarranted litigation." *Lentz,* 2007 WL 1628853, at *3 (internal citations and quotations omitted). "Further, employers should not be unduly burdened by a frivolous fishing expedition conducted by the plaintiff at the employer's expenses." *Id.* However, in the present case, the Court does not find that the action presents frivolous claims.[3] It is true that the Plaintiffs present no affidavits of workers employed by other subcontractors besides C.L.S., but a review of the Defendants' pay records and agreements to subcontract will easily reveal whether a common plan existed to improperly pay overtime salaries. It seems appropriate to certify the collective action at this time and revisit the question later after some discovery. If the allegations regarding the C.L.S. and ICS contract prove to be true, it would be reason-

---

2. *See* 29 U.S.C. § 213(a)(1) for exemptions.

3. The Court notes, however, that it makes no determination at this time regarding the merits of the claims.

able to conclude that ICS may also have engaged in these same practices with other subcontractors. It is unlikely that the other subcontractors' workers received a different rate of pay or did substantially different work. If sufficient evidence is not developed to demonstrate that the other subcontractors were not involved in the same alleged scheme or practice, the Court may decertify the collective action as to those parties after sufficient discovery is conducted. *See Kaluom,* 474 F.Supp.2d at 875 (rejecting contention that notice should be limited to workers of one company and stating that defendant could move for decertification after discovery had been conducted showing results different for employees of other companies). Accordingly, given the lenient standard at the notice stage, the Court is satisfied that the Plaintiffs and other individuals whom they seek to include within the class, including those who worked for other subcontractors, are "similarly situated" with respect to the Defendants' pay provisions so as to justify conditional certification and notice to potential class members.

The class is conditionally certified as follows:

> All individuals who worked or are working for Defendants PJ Services Catastrophe Solutions, Inc. and/or International Catastrophe Solutions, Inc. (ICS) performing manual labor either directly or indirectly through Defendants C.L.S. Construction and Labor Services, Flavio Burgos or other subcontractors in the post-Katrina reconstruction and restoration in the Gulf Coast region from August 29, 2005 until the date of the resolution of the present action, and who are or were eligible for overtime pursuant to the FLSA, 29 U.S.C. § 207 and who did not receive overtime pay.

(Rec.Doc. No. 60–2).

In accordance with the above, the Court orders that the Defendants produce the following information within the next thirty (30) days to Plaintiffs' counsel:

> A complete list of the names, current addresses, dates of employment, and dates of termination of all workers employed by the Defendants from August 29, 2005 to the present who fall within the above class definition.

"The Court emphasizes that the record is incomplete, so this Court cannot make a definitive determination as to whether the putative class members are similarly situated." *Vogt v. Tex. Instruments, Inc.,* 2006 WL 4660134, *3, 2006 U.S. Dist. LEXIS 67226, at *11 (N.D.Tex. Sept. 19, 2006). After initial discovery has been conducted and the potential opt-in plaintiffs file their notices of consent, the Court will consider any motion filed by the Defendants to decertify the class.

### III. Content of the Notice

Section 216(b) imparts the district court with discretionary authority to facilitate notice to potential plaintiffs. *See Hoffman,* 493 U.S. at 169, 110 S.Ct. 482. The Plaintiffs submitted an initial proposed notice to potential class members explaining the existence of the case and informing them of their right to opt-in to the collective action. (Rec.Doc. 60–3, Ex.1). The ICS Defendants objected to the Plaintiffs' initial proposed notice for failing to include a statement explaining that the potential members will be entitled to no relief if the Court rules in the Defendants' favor. In support, these Defendants cite to *Garza v. Chicago Transit Auth.,* 2001 WL 503036 (N.D.Ill. May 8, 2001), wherein the court allowed an almost identical addition to a proposed notice. The ICS Defendants further argue that the notice should include a statement of the Defendants' affirmative defenses, in addition to the summary of the Plaintiffs' claims.

The Plaintiffs have since revised their initial proposed notice and believe that their revised form of notice represents a fair compromise. (Rec.Doc. 67–2). The revised notice, which the Plaintiffs propose to disseminate in both English and Spanish, begins with an introduction offering some cursory information. A description of the lawsuit follows, summarizing the cause of action and incorporating the affirmative defenses asserted by the Defendants. The notice next includes an explanation of who is eligible to receive the notice and then explains the notified party of his or her right to participate in the lawsuit. It then sets out the effect of joining the suit, the absence of a legal effect in not joining the suit, and the prohibition of any retaliation by the Defendants. Lastly, it lists the attorneys acting as counsel for the proposed class.

 The Court finds the notice is acceptable for approval, with the caveat that it should include a statement indicating that opt-in plaintiffs will not be entitled to any relief if the Court should rule in favor of the Defendants. There is no reason to disallow the ICS Defendants' request that the notice include this statement. Such a statement is legally accurate and helpful in fully explaining the situation to potential plaintiffs.

Accordingly, the Court approves the proposed revised notice with the following addition inserted after the first sentence in the section titled "Effect of Joining this Suit":

> If the Court rules in favor of the Plaintiffs and you have sustained losses, you may be entitled to relief if you join this action. If the Court rules in favor of the Defendants, you will be entitled to no relief if you join this action.

## IV. Distribution of the Notice

 The Plaintiffs' proposed notice plan requests that notice be provided via a variety of methods. First, the Plaintiffs request a direct mailing to class members for whom Defendants can produce contact information. Second, the Plaintiffs request permission to contact consulates and embassies in the Washington D.C. metropolitan region for Brazil, Mexico, El Salvador, Guatemala, Honduras, Nicaragua, Peru and Venezuela. Third, the Plaintiffs request notice through publication in Portuguese language newspapers along the Gulf Coast and Massachusetts and Spanish and English newspapers along the Gulf Coast. Fourth, the Plaintiffs request that notice be provided through summary announcements on radio stations along the Gulf Coast and in Massachusetts. Fifth and finally, the Plaintiffs request that notice and other information be published on the internet at the website www.icsovertimecase.com. The Plaintiffs believe that these steps are reasonably calculated to reach the intended audience and will cost no more than $6,000.00.

The ICS Defendants argue that the Plaintiffs and their counsel should be strictly forbidden from communicating with potential opt-in plaintiffs during the opt-in period. They contend that the Plaintiffs have not demonstrated a reasonable basis for court authorization to contact consulates and embassies or to engage in newspaper, radio, and internet advertising. They further assert that the distribution of notice should be limited to mailing of the notice and consent forms to potential plaintiffs.

 Neither parties nor their counsel may communicate with any potential opt-in plaintiffs during the opt-in period unless the potential plaintiff communicates with them first and consents to further communication. *See Updite v. Delta Beverage Group, Inc.*, 2006 WL 3718229, at *5 (W.D.La. Dec.15, 2006); *Hipp v. Liberty Nat'l Life Ins. Co.*, 164 F.R.D. 574, 576

(M.D.Fla.1996). However, there is no reason to prohibit the use of consulates, publications, radio, or the internet. While the Plaintiffs will initially pay the cost of these additional methods of notice, in the event of a judgment in favor of the Plaintiffs, the Defendants could be forced to pay these costs. As stated above, Plaintiffs' counsel estimates at this time that a budget of $6,000.00 for the notice plan is adequate. The Court notes that the reasonableness of the notice dissemination costs may be questioned if Plaintiffs' counsel spends significantly more than this amount.

## V. Content of the Consent–to–Sue Form

▮▮▮ The Plaintiffs attached consent-to-sue forms to their initial complaint (Rec Doc. 1–2), pursuant to 29 U.S.C. §§ 216 and 257. The form consists of one paragraph, written in both English and Spanish, which states that by signing the form, the opt-in authorizes the filing and prosecution in his or her name, consents to become a party plaintiff in the action, and authorizes the Plaintiffs' various attorneys to represent, to proceed, and to settle on his or her behalf and others similarly situated with regard to their collective claims.

The ICS Defendants request that the consent-to-sue form also require each potential class member to answer basic questions regarding their claim, such as the name of their employer, their dates of employment, and their employment position.

The Plaintiffs object to these Defendants' request for the inclusion of this additional information. The Plaintiffs consider the questions proposed by the ICS Defendants to be nothing more than additional discovery in the form of written interrogatories. The Plaintiffs note that these Defendants cannot point to a single case in which a court has approved a consent-to-sue form requiring plaintiffs to provide such information before they may join the case. The Plaintiffs also note that courts have recognized the need for simple and accessible consent forms where workers utilizing the forms have limited education, speak limited English or lack other resources. The Plaintiffs further assert that the Defendants should already possess this additional information under Department of Labor regulations.

The Court finds that the consent-to-sue form is sufficient as written. In *Montalvo v. Tower Life Bldg.*, 426 F.2d 1135, 1148–49 (5th Cir.1970), the court held that the a consent form consisting of a typewritten statement requesting that "legal action be taken to secure my claim for me due me under the Fair Labor Standards Act," followed by the plaintiff's signature, sufficiently constituted written consent because it clearly established an intent to become a party plaintiff. Thus, under Fifth Circuit precedent, little more is needed than a statement indicating intent to participate and a signature, and the additional requirements proposed by the ICS Defendants are unnecessary. Accordingly, the Court approves the consent-to-sue form as provided by the Plaintiffs.

## VI. Tolling of the Statute of Limitations

▮▮▮ The Plaintiffs request that the Court toll the applicable statute of limitations during the pendency of the opt-in period. The ICS Defendants oppose tolling, claiming that a determination as to whether the statute of limitations should be tolled is premature at this time.

▮▮▮ The applicable statute of limitations period under the FLSA is set forth in 29 U.S.C. § 255. The action must commence within two years after the cause of action accrued if the violation is "unwillful." *Id.* However, if the violation is "willful," the cause of action must be com-

menced within three years after it accrued. *Id.* "Willful" means "that the employer either knew or showed reckless disregard as to whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 128, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988). A cause of action "begins to accrue at each regular payday immediately following the work period during which the services were rendered for which the wage or overtime compensation is claimed." *Halferty v. Pulse Drug Co., Inc.,* 821 F.2d 261, 272 (5th Cir.1987), *modified on other grounds,* 826 F.2d 2 (5th Cir.1987); *see also Hendrix v. Yazoo City,* 911 F.2d 1102 (5th Cir.1990) (cause of action begins to run on date employer makes unlawful payment). In a collective action, the action is "commenced" in the case of an opt-in plaintiff on the date a written consent is filed. 29 U.S.C. § 256(b); *Atkins v. General Motors Corp.,* 701 F.2d 1124, 1130 n. 5 (5th Cir.1983); *Quintanilla v. A & R Demolition, Inc.,* 2006 WL 1663739, at *1 (S.D.Tex. June 13, 2006).

However, this limitations period is subject to tolling on equitable grounds. *Hodgson v. Humphries,* 454 F.2d 1279, 1283–84 (10th Cir.1972). "Evidence that would permit tolling is evidence that would show that an employer-defendant engaged in fraud or misrepresentations that induced plaintiffs to delay filing FLSA-required opt-in notices." *Baldridge v. SBC Communications, Inc.,* 2006 WL 832517, at *1 (N.D.Tex.2006) (citing *Ott v. Midland–Ross,* 523 F.2d 1367, 1370 (6th Cir.1975)).

The Plaintiffs argue that tolling is appropriate where the plaintiffs were "excusably unaware of the existence of [their] cause of action" or if their injury was "inherently unknowable." *Hasken v. City of Louisville,* 173 F.Supp.2d 654, 661 (W.D.Ky.2001). The Plaintiffs argue that they were reasonably unaware during the relevant pay periods that they were being underpaid by the Defendants and that the Defendants failed to post notice of their rights under the FLSA, which is required under federal regulations. *See* 29 C.F.R. § 516.4 (requiring covered employers to "post and keep posted a notice explaining the [FLSA], as prescribed by the Wage and Hour Division [of the Department of Labor], in conspicuous places in every establishment where such employees are employed so as to permit them to observe readily a copy"). Moreover, the Plaintiffs state that educational and sociological factors inherent to the class affect the reasonableness of the Plaintiffs remaining ignorant of their rights.

In response, the ICS Defendants argue that since the FLSA statute of limitations will not begin barring *any* potential opt-in plaintiffs until September 2007, under the two year period, or until September 2008, under the three year period, the Plaintiffs request for tolling is premature and unnecessary. The ICS Defendants also argue that the Plaintiffs have not made a showing that the individual potential class members are entitled to equitable tolling, as the failure to post the FLSA notice does not, in and of itself, provide a basis for equitable tolling. Moreover, the ICS Defendants deny that they failed to provide the posted notice, and the failure of an employee to see a required posted notice does not establish that the employer did not comply with the posting requirements. *See Teemac v. Henderson,* 298 F.3d 452, 458 (5th Cir.2002); *see also Archer v. Sullivan County, Tenn.,* 129 F.3d 1263, 1267, 1997 WL 720406(6th Cir.1997) (holding that employer's failure to provide required Department of Labor notice of employee's rights under FLSA does not alone provide a basis for equitable tolling).

The Court finds that a tolling of the statute of limitations is premature. "In order to take advantage of the longer

statute of limitations period on their claims, Plaintiffs bear the burden of proving that Defendant willfully violated the FLSA." *Reyes v. Texas Ezpawn, L.P.,* 459 F.Supp.2d 546, 565 (S.D.Tex.2006). The Plaintiffs must present affirmative evidence of the Defendants' alleged knowledge or reckless disregard for the FLSA statute and may not rest on mere allegations or denials of its pleadings. *Id.* at 565–56. The Court makes no determination at this time as to whether the Defendants' alleged violations were "willful" or "unwillful." The time for filing claims has not expired under either statute of limitations period, and it is therefore premature to decide this issue. The Plaintiffs' request for tolling is denied without prejudice.

**VII. Length of the Opt–In Period**

■ The Plaintiffs request an opt-in period of one year. They contend that a longer opt-in period is necessary in order to locate potential class members who were previously employed by the Defendants but migrated to other states. Furthermore, the Plaintiffs claim that tracking down the potential plaintiffs will be both cumbersome and time-consuming due to a language barrier.

In response, the ICS Defendants argue that the Plaintiffs' request is both unreasonable and excessive, noting that the vast majority of decisions offer an opt-in period of thirty to ninety days. The ICS Defendants contend that a shorter opt-in period is, in fact, beneficial to potential plaintiffs as it allows them to avoid statute of limitations defenses, and as a result, prevents potential opt-in plaintiffs from losing their "similarly situated" status by the creation of two classes of opt-in plaintiffs (i.e. those filing within the statute of limitations and those filing outside of the statute of limitations). According to the ICS Defendants, the fact that the Plaintiffs delayed seeking certification after filing the lawsuit is fur-

ther proof that a longer opt-in period is unwarranted in this case. Lastly, these Defendants claim that the longer period will also be expensive for the parties and time-consuming for the Court.

Longer opt-in periods have been granted in cases where potential plaintiffs are hard to contact due to their migration or dispersal. *Roebuck v. Hudson Valley Farms,* 239 F.Supp.2d 234, 240–42 (N.D.N.Y.2002) (allowing for an opt-in period of nine months largely due to fact that potential plaintiffs had or were likely to have migrated to other places within North America and other continents). The Court believes that an opt-in period of ninety days is adequate. This period sufficiently affords the Plaintiffs the time needed to locate potential opt-in plaintiffs who have migrated to other areas, but is not so unreasonable as to be overly burdensome or excessive for the Defendants. Accordingly, proposed plaintiffs have ninety days to opt-in to the collective action by the filing of a consent-to-sue form. The ninety day opt-in period will begin to run on the date the Defendants provide a complete list of the names, addresses and dates of employment and termination of potential class members.

**VIII. Conclusion**

IT IS ORDERED that the Plaintiffs' motion to proceed as a collective action and for court-authorized notice to potential opt-in plaintiffs in this collective action under 29 U.S.C. § 216(b) is GRANTED; and

IT IS FURTHER ORDERED that the class of potential opt-in plaintiffs entitled to notice is defined as all individuals who worked or are working for Defendants PJ Services Catastrophe Solutions, Inc. and/or International Catastrophe Solutions, Inc. (ICS) performing manual labor either directly or indirectly through Defendants C.L.S. Construction and Labor Services,

Flavio Burgos or other subcontractors in the post-Katrina reconstruction and restoration in the Gulf Coast region from August 29, 2005 until the date of the resolution of the present action, and who are or were eligible for overtime pursuant to the FLSA, 29 U.S.C. § 207 and who did not receive overtime pay; and

IT IS FURTHER ORDERED that the proposed revised "FLSA Notice" attached as an exhibit to the Plaintiffs' Reply to the Defendants' Memorandum in Opposition to the Plaintiffs' Motion (Rec.Doc. 67–2, Ex. 1) is approved, except that it shall include a sentence in the section titled "Effect of Joining this Suit" stating: "If the Court rules in favor of the Plaintiffs and you have sustained losses, you may be entitled to relief if you join this action. If the Court rules in favor of the Defendants, you will be entitled to no relief if you join this action"; and

IT IS FURTHER ORDERED that the consent-to-sue form attached as an exhibit to the Plaintiffs' Reply to the Defendants' Memorandum in Opposition to the Plaintiffs' Motion (Rec.Doc. 67–2, Ex. 2) is approved; and

IT IS FURTHER ORDERED that no later than thirty (30) days after the date of this Order Defendant shall produce to Plaintiffs' counsel a complete list of the names, current addresses, dates of employment, and dates of termination of all workers employed by the Defendants from August 29, 2005 to the present who fall within the above class definition; and

IT IS FURTHER ORDERED that the time period within which potential opt-in plaintiffs may opt-in is ninety (90) days; and

IT IS FURTHER ORDERED that the ninety (90) day opt-in period will begin to run on the date that the Defendant provide a complete list of the names, addresses, and dates of employment and termination of potential class members; and

IT IS FURTHER ORDERED that the tolling of the statute of limitations is denied without prejudice.